C.K. Lee, Esq., *admitted pro hac vice*
LEE LITIGATION GROUP, PLLC
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
Email: cklee@leelitigation.com

David Makman, Esq.
CA Bar No.: 178195
LAW OFFICES OF DAVID A. MAKMAN
655 Mariner's Island, Suite 306
San Mateo, CA 94404
Tel: 650-242-1560
Fax: 650-242-1547
Email: david@makmanlaw.com

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LYNN MOORE, SHANQUE KING, and JEFFREY AKWEI<br><br>                                    Plaintiffs,<br><br>v.<br><br>TRADER JOE'S COMPANY<br><br>                                    Defendant. | Case No.: 4:18-cv-04418<br><br>**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs LYNN MOORE, SHANQUE KING, and JEFFREY AKWEI (hereinafter, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class Action Complaint against Defendant,

TRADER JOE'S COMPANY (hereinafter "Defendant"), and allege as follows based upon their own personal knowledge and the investigation of their counsel:

## NATURE OF THE ACTION

1.      The therapeutic benefits of manuka honey are well-known. The especially high antibacterial properties of manuka honey, a type of honey from bees that pollinate the flowers of the manuka bush (*Leptospermum scoparium*), indigenous to New Zealand, has received considerable attention from the scientific world. Research by an international network of laboratories has shown that New Zealand's manuka honeys are one of the two major medicinal honeys that have exhibited high antibacterial potency relative to other honeys.[1] Its efficacy as dressing for wounds, burns, skin ulcers and in reducing inflammation has been well documented.[2]

2.      Such research findings have spurred the commercial growth of New Zealand apiaries (places where beehives of honey bees are kept, also known as bee yards), whose manuka honey products have become increasingly sought-after by the health-conscious middle class in a number of Western countries, including the United States. While the demand for manuka honey has increased, the supply of natural manuka honey with high antibacterial potency remains limited. As a result, the price for a bottle of manuka honey can be as much as ten times higher than that of ordinary non-manuka honeys.

---

[1] *See* Paulus H. S. Kwakman et al., *Two Major Medicinal Honeys Have Different Mechanisms of Bactericidal Activity*, PLOS ONE, Volume 6, Issue 3 (March 2011), *available at* http://www.umf.org.nz/Modules/LSDocumentManager/DocumentDownload.aspx?DocumentId=36; *see also,* Manisha Deb Mandal et al., *Honey: its medicinal property and antibacterial activity,* ASIAN PAC. J. TROP. BIOMED. Apr. 2011; 1(2): 154–160, *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3609166/; Alison Wallace et al*., Demonstrating the safety of manuka honey UMF® 20+ in a human clinical trial with healthy individuals*, p. 4, BRITISH JOURNAL OF NUTRITION (2009), *available at* http://www.umf.org.nz/Modules/LSDocumentManager/DocumentDownload.aspx?DocumentId=34.

[2] Mandal at 154-155.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18    3.    Nearly 2,000 tons of manuka honey is consumed in the UK each year out of
19 an estimated 11,000 tons globally. However, the production of authentic manuka honey is
20 thought to be around 1,900 tons. By mathematical necessity, there is a wave of fake or
21 adulterated manuka honey products on the market.[3]

22    4.    Against this backdrop, this class action seeks redress for Defendant's
23 misleading practices in its marketing, advertising, labeling and promotion of its 8.8 oz.
24 Trader Joe's Manuka Honey product (hereinafter "Product"). Below are two images of the
25 Product and its varying labels.

26
27    [3] http://www.independent.co.uk/life-style/food-and-drink/features/the-manuka-honey-scandal-
28 9577344.html



5.     Some of Defendant's labels state that that Product is "100% New Zealand Manuka Honey" while others state only "New Zealand Manuka Honey."  Regardless of how the Product is labeled, the ingredients statement lists only one ingredient, manuka honey:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

25
26
27
28

6.      Regardless of whether or not the front of the label states that the Product is "100%" manuka honey, the ingredient statement alone would lead a reasonable consumer to conclude exactly this.   Since "manuka honey" is the only ingredient listed, the mathematically irresistible inference is that the Product is entirely manuka honey.

7.     However, Plaintiffs' testing confirms that this is false, because the Product only contains between about 57.3% to 62.6% manuka honey.

8.     As a result, the Product is mislabeled and is misleading to consumers. No matter which of the Defendant's representations consumers encounter, they will have been deceived. Manuka honey is not the only ingredient in the Product. The Product is not 100% manuka honey.

9.     While the finished Product includes manuka honey, Defendant does not take reasonable measures to ensure that the Product is made entirely from manuka honey. The Product is made partially from non-manuka honey. In other words, the Product has been adulterated by the inclusion of cheaper honey.

10.     Throughout the advertising of the Product, Defendant has consistently conveyed its uniform and deceptive manuka honey purity claims to consumers through both the Product's labeling and its website representations.

11.     Defendant has reaped enormous profits from its false, misleading and deceptive marketing and sale of the Product.

12.     This lawsuit seeks redress for the misleading manner in which the Defendant has marketed the Product and continues to market the Product. Plaintiffs bring this proposed consumer class action individually and on behalf of all other persons similarly situated, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product for consumption and not for resale.

13.     Through this action, Plaintiffs seek injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs and all other relief available to the Class as a result of Defendant's unlawful conduct.

14.     Defendant violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes include:

1)  Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.*;

2)  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;

3)  Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.*;

4)  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

5)  California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

6)  Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.*;

7)  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

8)  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

9)  District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

10)  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

11)  Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;

12)  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1*, et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;

13)  Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

14)  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS Section 505/1, *et seq.*;

15)  Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.*;

16)  Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*;

17)  Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.*;

18)  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.*;

*19)*  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.*;

*20)*  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

*21)*  Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

*22)*  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

*23)*  Michigan Consumer Protection Act, § 445.901, *et seq.*;

*24)*  Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

*25)*  Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

*26)*  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

*27)*  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.*;

*28)*  Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

*29)*  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

*30)*  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.* ;

*31)*  New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

*32)*  New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

*33)*  New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*, and New York False Advertising, N.Y. Gen. Bus. Law § 350, *et seq.*;

*34)*  North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

*35)*    North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes § 75-1, *et seq.*;

*36)*    Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. *et seq.*;

*37)*    Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

*38)*    Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

*39)*    Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § 201-1, *et seq.*;

*40)*    Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

*41)*    South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

*42)*    South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37 24 1, *et seq.*;

*43)*    Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.*;

*44)*    Texas Stat. Ann. § 17.41, *et seq.*, Texas Deceptive Trade Practices Act, *et seq.*;

*45)*    Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.*;

*46)*    Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, § 2451, *et seq.*;

*47)*    Virginia Consumer Protection Act, Virginia Code Ann. §59.1-196, *et seq.*;

*48)*    Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;

*49)*    West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

*50)*    Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, *et seq.*;

*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

15.     These state laws mirror and incorporate federal law regulating (i) food labelling deception[4] and (ii) food adulteration.[5] For example, California's Sherman law specifically establishes as California state law the same standards as the Federal Food, Drug, and Cosmetic Act.[6] Where laws differ in specific wording, their content is nonetheless the same. For example, the Product is adulterated under Federal and California law.[7, 8]

16.     Under both Federal law and the consumer protection laws of the states, Defendant's honey is mislabeled and falsely advertised.[9] The common or usual name of the product sold by Defendant is "Manuka-based honey blend," and its statement of

---

[4] 21 U.S.C. § 343, *et seq.*

[5] 21 U.S.C. § 342, *et seq.*

[6] California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law") , California Health & Safety Code § 109875 *et seq.*, 109930("'Federal act' means the federal Food, Drug, and Cosmetic Act, as amended (21 U.S.C. Sec. 301, *et seq.*)"); Sherman Act, 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state"); *id.* 110505 ("Definitions and standards of identity, quality, and fill of container, and any amendments to the definitions and standards, adopted pursuant to the federal act in effect on the effective date of this part, or adopted on or after that date, are the definitions and standards of identity, quality, and fill of container in this state").

[7] 21 U.S.C. § 342(b): A food shall be deemed to be adulterated—

**(b) Absence, substitution, or addition of constituents**
(1) If any valuable constituent has been in whole or in part omitted or abstracted therefrom; or
(2) if any substance has been substituted wholly or in part therefor; or
(3) if damage or inferiority has been concealed in any manner; or
(4) if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight, or reduce its quality or strength, or make it appear better or of greater value than it is.

[8] Sherman Law, 110585. Any food is adulterated if any one of the following conditions exist:
(a) If any valuable constituent has been in whole or in part omitted or abstracted therefrom.
(b) If any substance has been substituted wholly or in part therefor.
(c) If damage or inferiority has been concealed in any manner.
(d) If any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight or reduce its quality or strength or make it appear better or of greater value than it is.

[9] California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

identity must correspond to that description, so the Product is misnamed, misrepresented, and falsely advertised when advertised as "Manuka Honey." [10, 11] Defendant advertises pure Manuka honey, but does not deliver it, instead delivering an inferior Manuka-based blend.[12] The sale of the mislabeled products was unfair and unlawful.[13] Put another way, Defendant sells adulterated[14] manuka honey. This would be actionable even if consumers were not actually deceived.[15]

17.     Part 259.1 of Title 1 of the New York Codes, Rules and Regulations (1 NYCRR § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

> "For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the Code of Federal Regulations (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (2) Part 100 of title 21 of the Code of Federal Regulations [21 C.F.R. 100 et seq.], containing Federal definitions and standards for food packaging and labeling General at pages 5-10…."

1 NYCRR § 259.1(a)(2).

---

[10] Defendant thereby violates 21 C.F.R. § 101.1, *et seq.*, including 21 C.F.R. §§101.3, 101.4, 101.18, and 102.5.

[11] Sherman Law, 110720. Any food for which no standard of identity exists is misbranded unless it bears a label clearly stating the common or usual name of the food.

[12] California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, §§ 1761(d), 1770(a)(5), 1770(a)(7) , and 1770(a)(9).

[13] California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

[14] Sherman Law, 110620. It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is adulterated.

[15] "[T]he reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation. . . .The predicate violation here is of California's Sherman Law, *see* Cal. Health & Safety Code §§ 110760, 110765, which itself incorporates standards set by FDA regulations, see id. §§ 110100, 110670. These FDA regulations include no requirement that the public be likely to experience deception." *Bruton v. Gerber Prods. Co.*, No. 15-15174, 2017 U.S. App. LEXIS 12833, at *6-7 (9th Cir. July 17, 2017).

18.     Courts have acknowledged the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions").

19.     Defendant's conduct constitutes "economic adulteration":

> the consumer would be unaware that less expensive ingredients had been substituted and that the article was inferior to that which he expected to receive when making his purchase. The fact that the substituted article was not deleterious is immaterial. From its inception, to its last amendment, the Pure Food and Drugs Act was not designed primarily for the protection of merchants and traders; but was intended to protect the consuming public.

*United States v. Two Bags, Poppy Seeds*, 147 F.2d 123, 127 (6th Cir. 1945).

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed class consists of over 100 class members; (ii) at least some of the proposed class members have a different citizenship from Defendant; and (iii) the amount in controversy exceeds the sum of value of $5,000,000.00, excluding interest and costs.

21.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

22.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

23.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332 because the matter is a controversy exceeds the sum or value of $75,000.

24.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendant because they are headquartered and incorporated in California.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant have caused harm to Class members residing in this District, and the Plaintiff is a resident of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

## PARTIES

*Plaintiffs*

26.     Plaintiff LYNNE MOORE is a citizen of the State of California and resides in Contra Costa County. On January 17, 2018, Plaintiff MOORE viewed an image of the Product and its label on Amazon.com. The label described the Product as "100% New Zealand Manuka Honey."

27.     Relying on this misrepresentation, Plaintiff MOORE decided to purchase her Product for $23.99 on Amazon.com that day. She would not have purchased this had she known that the Product was less than 65% manuka honey. As a result, Plaintiff MOORE was injured when she was denied the benefit of her bargain and paid a premium price for the Product, which did not deliver what its label promised.

28.     Plaintiff JEFFREY AKWEI is a citizen of the State of New York and resides in New York County. On January 9th, 2018, Plaintiff AKWEI purchased the Product at Trader Joe's on 142 E. 14th Street New York, NY 10003 for $13.99. Plaintiff AKWEI viewed the ingredients statement on the Product and from this inferred that manuka was the only ingredient, and that the honey was pure manuka.

29.     Relying on the ingredients statement, Plaintiff AKWEI decided to purchase the Product. Had Plaintiff AKWEI known that the honey was not exclusively manuka, he would not have purchased the Product at the given price. As a result, Plaintiff AKWEI was

injured when he was denied the benefit of his bargain and paid a premium price for the Product, which did not deliver what the ingredients label statement promised.

30.     Plaintiff SHANQUA KING is a citizen of the State of North Carolina and resides in Carbarrus County. On January 14th, 2018, Plaintiff KING purchased the Product at a Trader Joe's on 1820 East Arbors Drive, Charlotte, NC 28262 for $13.99. Before purchasing the Product, Plaintiff KING viewed the ingredients label and was thereby led to believe that manuka honey was the sole ingredient in the Product, and that the honey was pure manuka.

31.     Plaintiff KING purchased the Product in reliance on this misrepresentation. Had he know the truth, he would not have purchased the Product at the given price. As a result, Plaintiff KING was injured when he was denied the benefit of his bargain and paid a premium price for the Product, which did not deliver what it promised.

*Defendant*

32.     Defendant TRADER JOE'S COMPANY is a corporation organized under the laws of the state of California, with its principal place of business at 800 S. Shamrock Avenue, Monrovia, CA 91016 and an address for service of process at Paracorp Incorporated, 2804 Gateway Oaks Dr. #100, Sacramento, CA 95833.

33.     Defendant markets and sells honey products throughout the United States.

34.     The Product can be purchased in brick and mortar Trader Joe's stores throughout the United States and online.

## FACTUAL ALLEGATIONS

### The Defendant's Misleading Representations

35.     Defendant markets and sells the Product. The front label of the Product states either "100% New Zealand Manuka Honey" or "New Zealand Manuka Honey."

36.     Irrespective of the front label, the ingredients statement lists manuka honey as the sole ingredient.

37.     The ingredients statement and the "100% New Zealand Manuka Honey" representation both communicate the same message, which is the Product is pure manuka honey, not a blend of manuka honey and other honeys.

## The GNS Science Report

38.     GNS Science is a research laboratory owned by the government of New Zealand.  It "engage[s] in the full spectrum of science from basic research through to product development and consultancy services."  Its revenues come from government research grants, research contracts, product development, and various consultancy services.  GNS collaborates with research institutes and universities around the world.  Its scientists publish in scientific and professional journals and present their research results at national and international scientific conferences.  Additionally, many of its staff hold adjunct academic positions and supervise graduate students.  *See* **Exhibit A.**

39.     GNS Science conducted a test of the Product bought by Plaintiff MOORE and found that its manuka content was 62.6%.  The remaining content was other honey types. *See* **Exhibit B** (Sample 1 – CA).

40.     GNS Science conducted a test of the Product purchased by Plaintiff AKWEI and found that its manuka content was 57.3%.  The remaining content was other honey types.  *See* **Exhibit B** (Sample 2 – NY).

41.     Thus, the honey purchased by Plaintiff MOORE and Plaintiff AKWEI was far from 100% manuka honey.  The honey was not pure and manuka honey was far from being the only ingredient.

## A Reasonable Consumer Would Be Deceived by Defendant's Misrepresentations

42.     Plaintiffs and Class members purchased the Product either online or from Trader Joe's brick and mortar stores during the Class period.

43.     They did so in reliance on Defendant's uniform message that the Product was pure manuka honey, which was conveyed through either the "100% New Zealand Manuka Honey" representation or through the ingredients statement listing manuka honey as the only ingredient.  Plaintiffs and the Class would not have purchased the Product at the given price had they known the truth about its contents.

44.     Defendant's deceptive misrepresentations were material to Plaintiffs' and Class members' decisions to purchase the Product because consumers of manuka honey care a great deal about the purity of the manuka honey they purchase.  They purchase manuka honey, not only for its taste, but for its healthful properties, which depend on the specific purity level.

45.     The manuka grower *Bees and Trees* explains the special problems of controlling manuka purity:

> We watch closely as the season approaches and time the placement of their hives to maximize their exposure to the Manuka nectar flow… While fascinating creatures, the bees don't listen very well, and we can't tell them to only work the Manuka flowers.

> Despite that, there are some techniques you can use when harvesting the honey to segregate honey coming from different areas of the hive to increase the concentration of Manuka Honey in a given batch. As experienced Manuka Honey producers with our own extraction operation, we're quite good at maximizing our results.[16]

46.     Reasonable consumers know that that the concentration of manuka as opposed to other honey pollens can vary significantly from brand to brand depending on what measures have been taken to maximize manuka purity.  Accordingly, they attach importance to representations that communicate a higher purity level.  The value of honey increases in proportion to the amount of it that is made from manuka.

---

[16] https://www.beesandtrees.com/

47.    Reasonable consumers would be deceived by Defendant's misrepresentations because they would reasonably assume that Defendant is fulfilling its legal obligation to market its Product truthfully.  They would reasonably assume that a producer would not represent a honey as pure manuka without first testing it to ensure that this was true.

48.    Defendant knew that due to its materially misleading label and packaging, a reasonable customer would expect the Product to be authentic and possess the advertised manuka content.

49.    As a result of Defendant's misleading representations, consumers – including Plaintiffs and members of the proposed Class – have purchased the Product in reliance on such representations.

50.    Plaintiffs and members of the proposed Class have been and will continue to be materially misled by Defendant's misleading manuka ratings claims.

**Plaintiff and the Class Were Injured as a Result of Defendant's Deceptive Practices**

51.    As a result of the Defendant's false manuka purity claims, Plaintiffs and the Class members have been injured in their purchase of the Product. Plaintiffs and Class members have been deceived into purchasing the Product after they were misled into believing that the Product is pure manuka.

52.    A honey that has a higher manuka content is more valuable than honey with lesser manuka content, given the special qualities of manuka and the very limited supply of manuka in the world.  The manuka harvester *True Honey* explains:

> It's a question we get asked a lot. "So, just why is Manuka honey so expensive?"…
>
> The unique properties of Manuka Honey are well understood by consumers around the world…   Manuka Honey has a very limited harvest period and can only be collected at certain times of the year.   It is independently tested at New Zealand laboratories to ensure its true to label.

Authentic New Zealand Manuka honey is a very limited resource. We go to great lengths to find the best areas of dense Manuka bush, in New Zealand's remotest, greenest back country. This keeps any contaminants out of our honey, and makes sure that our bees have VIP access to all the Manuka nectar they can slurp. But these places are hard to get to. And with no roads for miles, bringing trucks in can be pretty hard on the native bush. So hives often need to be flown in by helicopter.[17]

53.    Plaintiffs were injured because Defendant's deceptive practices caused them to pay a premium price for the Product based on the content claims conveyed by the front label and/or ingredients statement.

54.    As a result of Defendant's mislabeling of the Product, Plaintiffs were denied the benefit of their bargain.

55.    The Product is supposed to have at least 100% manuka honey. According to GNS Science's test results, the Product contained on average 59.95% manuka honey.  Thus Plaintiffs and Class members were denied approximately 40.05% of the benefit of their bargains. As a result, Plaintiff MOORE is entitled to a refund of $9.61[18], Plaintiff AKWEI is entitled to a refund of $5.60[19], and Plaintiff KING is entitled to a $5.60[20] refund.

**Defendant's Production Practices Render the Product Adulterated**

56.    With respect to the Product labels that state merely that the Product is "Manuka Honey," without the "100%" representation, such labeling is nonetheless fraudulent and deceptive. Under the FDA Compliance Policy Guide, section 515.300, "A honey may be labeled with the name of the plant or blossom provided that the particular plant or blossom is the chief floral source of the honey, such as 'Orange Blossom Honey'

---

[17] https://www.truehoneyco.co.uk/en/2017/03/10/manuka-honey-expensive/

[18] $23.99 x .4005 = $9.61

[19] $13.99 x .4005 = $5.60

[20] $13.99 x .4005 = $5.60

or 'Clover Honey,' and provided that the honey producer is in a position to demonstrate that the plant or blossom designated on the label constitutes the chief floral source of the honey." Thus, Defendant may only state on the label that the Product is "Manuka Honey," per FDA guidance, if manuka blossoms are the "chief floral source" for the honey. However, pointedly, the FDA has declined to define what constitutes a "chief floral source," *see* 83 Fed. Reg. 8996, 8997 (Mar. 2, 2018), and has stated instead that it is the responsibility of the producer to ensure that "[a]ny claims about the floral source of the honey must be truthful and not misleading (see section 403(a)(1) of the FD&C Act)." *Proper Labeling of Honey and Honey Products: Guidance for Industry*, p. 5. Based on the attached laboratory report, **Exhibit B,** actual manuka honey content comprises from 57.3% to 62.6%. The balance of Defendant's adulterated Product is comprised of other honeys. Even though Defendant's Product is comprised of up to 62.6% manuka honey (and frequently lower, due to variance among the Products), such percentage fails to satisfy the "chief floral source" requirement of the FDA, which the FDA stated should be based on what would not deceive consumers. The FDA specifically shifted responsibility to the producer to ensure that the Product's labels are not "false or misleading." Plaintiff believes that Defendant's Product labels that state "Manuka Honey," even without the 100% representation, are false and misleading to all consumers. In order to not misrepresent their nature, Defendant's Product would need to have at least 90% pure manuka honey at minimum. While Plaintiff recognizes that there may invariably be impurities to gathering manuka honey due to the natural bee gathering process, consumers will naturally assume they are receiving what labels plainly state they are purchasing, particularly for the pricing premium that manuka honey enjoys over clover honey or other blossoms. For example, a 350g bottle of Maori Honey's "Night Harvest 2014" guarantees 92% manuka content as a minimum, and costs about $266 ($21.55 per oz.),[21] while a 453g container of clover honey

---

[21] https://maorihoney.com/night-harvest#

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

costs about $4.50 ($0.28 per oz.),[23] and a 1kg container of kamahi honey costs about $27 ($0.77 per oz.).[25]

57. The inclusion of honey from other cheaper floral blossoms in the Product is classic adulteration that is fraudulent and misleading. Other manuka honey manufacturers clearly delineate the actual manuka honey percentage in their products' advertising to avoid false and misleading information, per FDA rules and 83 Fed. Reg. at 8997. For example, Airborne prominently features the minimum pollen count of its product line on the front of the label, and prints the specific amount in the batch on the back of the label:



[23] https://www.amazon.com/Billy-Bee-Canadian-Clover-Honey/dp/B00I9VA8CC/ref=sr_1_2_s_it?ie=UTF8&qid=1545458445&sr=1-2&fpw=pantry&keywords=clover+honey
[25] https://www.amazon.com/New-Zealand-Kamahi-Honey-35oz/dp/B00EDQBC4K/ref=sr_1_2_s_it?s=grocery&ie=UTF8&qid=1545458765&sr=1-2&keywords=Kamahi%2BHoney&th=1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

58.    By failing to identify the actual manuka content percentage, Defendant is misleading consumers. An analogous scenario would be if a consumer purchased a bottle of Johnny Walker Blue ($179.99 per bottle), but it was actually adulterated with 40%, 30%, or even 10% Johnny Walker Red ($33.99 per bottle). Such a consumer would clearly have been defrauded.

59.    Other than impurities from the honey gathering process, for the Products to contain anything other than manuka honey is misleading and fraudulent. In the alternative, Defendant needs merely to state that its Product is only 50% manuka honey.

**Plaintiffs' and Class Members' Claims Are Consistent with Federal Law**

60.    Plaintiffs' and Class members' claims are consistent with federal law. The February 2018 Guidance from the FDA states that it is forbidden to adulterate any honey by supplanting a "increasing its bulk" with a cheaper ingredient, thereby replacing a "valuable constituent" of that product with something less valuable.  *Proper Labeling of Honey and Honey Products: Guidance for Industry*, p. 5, n 4.

61.    Defendant's production process constitutes adulteration because it amalgamates honey from many different hives and only afterwards measures the manuka honey content of the mixture.  Defendant thereby deliberately adulterates high-manuka honey by diluting it with less valuable low-manuka honey to enable it to market the admixture as "manuka honey."  This is adulteration because cheaper honey "has been substituted for some of the honey so as to increase its bulk or weight."  *Id.*

62.    The (non-legally binding) February 2018 Guidance also states that honey producers may label honey with the name of a plant or blossom if they have "information to support the conclusion that that the plant or blossom designated on the label is the chief floral source of the honey."  *Id*.  However, Plaintiffs do not allege that merely labeling the Product "manuka honey" was deceptive and unlawful.  Rather they allege that the message

concerning the specific <u>purity</u> of the Product, communicated by the "100% New Zealand Manuka Honey" claim and/or by the ingredients statement, was deceptive and unlawful.

63.     Calling the Product "manuka honey" merely places the Product in a general category.  However, Defendant did more than just this with its false and deceptive purity claims, which represented the Product as superior to, and more valuable than, competing manuka honey products.

## **CLASS ACTION ALLEGATIONS**

64.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. They bring this class action against Defendant on behalf of themselves and all members of the following class of similarly situated individuals and entities:

> All persons or entities in the United States who made retail purchases of the Product during the applicable limitations period and/or such subclasses as the Court may deem appropriate (the "Nationwide Class").

65.     California law applies to the Nationwide Class. Defendant's deception emanates from California. California law applies to the claims of out-of-state consumers.[30,][31,][32] Out-of-state consumers' rights would not be not jeopardized by a nationwide class.[33]

---

[30] *See Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632, at *47 (N.D. Cal. Dec. 21, 2010).

[31] *See Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 340 (N.D. Cal. 2010).

[32] "[O]ther states 'have no legitimate interest in denying higher recoveries to their residents.' *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 340 (N.D. Cal. 2010) (holding that application of California law to nationwide class of consumer protection and warranty claims would not violate manufacturers' due process rights)." *Pecover v. Elec. Arts, Inc.*, No. 08-cv-02820, 2010 BL 313212 (N.D. Cal. Dec. 21, 2010).

[33] "If they wish, unnamed class members may opt out of the current class action and attempt to sue Defendants under the statutes of their state of residence." *See Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 340 (N.D. Cal. 2010).

66.     In the alternative, Plaintiff AKWEI seek to represent a class consisting in (the "New York Class"):

> All persons or entities that made retail purchases of the Product in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

67.     Also in the alternative, Plaintiff MOORE seeks to represent a class consisting in (the "California Class"):

> All persons or entities that made retail purchases of the Product in California during the applicable limitations period, and/or such subclasses the Court may deem appropriate.

68.     Also in the alternative, Plaintiff KING seeks to represent a class consisting in (the "North Carolina" Class):

> All persons or entities that made retail purchases of the Product in North Carolina during the applicable limitations period, and/or such subclasses the Court may deem appropriate.

69.     Excluded from the Classes are current and former officers and directors of the Defendant, members of the immediate families of the officers and directors of the Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also, excluded from the Class is the judicial officer to whom this lawsuit is assigned.

70.     Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

71.     This action is proper for class treatment under Rules 23(b) (1) (B) and 23(b) (3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are thousands of Class members. Thus, the Class is so numerous that individual joinder of all Class members is impracticable.

72.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members

may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendant would likely unfairly receive millions of dollars or more in improper charges.

73.     Questions of law and fact arise from the Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

   a.   Whether labeling the Product  as "100% New Zealand Manuka Honey" is false and misleading;

   b.   Whether listing manuka honey as the Product's only ingredient is false and misleading;

   c.   Whether Defendant deprived Plaintiffs and the Class of the benefit of their bargain because the Product purchased were different from, and has less value than, what Defendant warranted;

   d.   Whether Defendant's marketing, promotion, advertising and sale of the Product is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to a violation state consumer protection laws;

   e.   Whether Defendant's honey is adulterated;

   f.   Whether Defendant must disgorge any and all profits it has made as a result of its conduct;

   g.   Whether Plaintiffs and members of the Class sustained injuries or damages as a result of Defendant's false advertising of the Product; and

   h.   Whether Defendant should be barred from (i) marketing the Product as "100% New Zealand Manuka Honey" and (ii) listing "manuka honey" as the only ingredient in the Product.

74.     The Class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitive litigation. Plaintiffs know of no difficulty which

will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

75.    Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs purchased the Defendant's Product during the Class Period and sustained similar injuries arising out of the Defendant's conduct in violation state consumer protection laws listed above. The Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by the Defendant's wrongful misconduct. In addition, the factual underpinning of the Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of all Class members and are based on the same legal theories.

76.    Plaintiffs will fairly and adequately represent and pursue the interests of the Classes and have retained competent counsel experienced in prosecuting class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Classes. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Classes. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Classes. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

77.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual class member to prosecute

a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

78.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

79.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

80.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Class members, although certain Class members are not parties to such actions.

81.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

# CAUSES OF ACTION

## COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**
**(brought individually and on behalf of the New York Class)**

82.     Plaintiff AKWEI alleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

83.     Plaintiff AKWEI brings this claim individually and on behalf of the other members of the New York Class for an injunction for Defendant's violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL § 349").

84.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are … unlawful."

85.     Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

86.     The practices employed by Defendant, whereby Defendant advertised, promoted, and marketed that their Product as being made of only manuka honey are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

87.     The foregoing deceptive acts and practices were directed at consumers.

88.     Defendant should be enjoined from misrepresenting that the Product is pure manuka.

89.     Plaintiff AKWEI, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this

proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)
### (brought individually and on behalf of the New York Class)

90.     Plaintiff AKWEI realleges and incorporates each and every allegation contained above as if fully set forth herein and further alleges as follows:

91.     Plaintiff AKWEI brings this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 349.

92.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

93.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by claiming that the Product is made entirely from manuka honey, leading Plaintiffs and the New York Class to believe Defendant's Product had a manuka content which it did not possess.

94.     Defendant's deceptive and unlawful conduct was specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, one or more of the following reasons:

a.   Defendant engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Product, which did, or tended to, mislead Plaintiff AKWEI and the Class about facts that could not reasonably be known by them;

b.   Defendant knowingly and falsely represented and advertised that the Product consisted solely of manuka honey with an intent to cause Plaintiff AKWEI and Class members to believe this;

c.   Defendant caused Plaintiff AKWEI and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

d.   Defendant made material representations and statements of fact to Plaintiff AKWEI and the New York Class that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

e.   Defendant intended that Plaintiff AKWEI and the members of the New York Class rely on their misrepresentations, so that Plaintiff AKWEI and the Class members would purchase the Product.

95.   The foregoing deceptive acts and practices were directed at consumers.

96.   The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the Product in that they misled Plaintiffs and the other Class members into believing that they were purchasing products which contained 100% manuka honey, when they were not.

97.   Under all of the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

98.   Defendant's actions impact the public interest because Plaintiff AKWEI and members of the Class were injured in exactly the same way as thousands of others

purchasing the Product as a result of and pursuant to Defendant's generalized course of deception.

99.    By committing the acts alleged in this Complaint, Defendant has misled Plaintiff AKWEI and the Class into purchasing the Product, on the basis of the erroneous belief that the Product is made only from manuka honey. This is a deceptive business practice that violates NY GBL § 349.

100.    Defendant's manuka claims misled Plaintiff AKWEI and are likely in the future to mislead reasonable consumers. Had Plaintiff AKWEI and members of the Class known the truth about the Product, they would not have purchased it.

101.    Plaintiff AKWEI and other members of the Class suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff AKWEI and members of the Class suffered actual monetary losses associated with the purchase of the Product. Plaintiff AKWEI and members of the Class are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT III
### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
### (FALSE ADVERTISING LAW)
### (brought individually and on behalf of the New York Class)

102.    Plaintiff AKWEI realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

103.    Plaintiff AKWEI brings this claim individually, as well as on behalf of members of the New York Class, for violations of NY GBL § 350.

104.    Defendant has been and/or is engaged in the "conduct of . . . business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

105.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law § 350-a(1).

106.    Defendant caused to be made or disseminated throughout New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers and the Class.

107.    Defendant's manuka misrepresentations as alleged herein were material and substantially uniform in content, presentation, and impact upon consumers at large.

108.    Defendant has violated N.Y. Gen. Bus. Law § 350 because its manuka misrepresentations were material and likely to deceive a reasonable consumer.

109.    Plaintiff AKWEI and Class members have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising.

110.    Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff AKWEI and members of the Class seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT IV

## VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, *et seq.*

**(brought individually and on behalf of the Nationwide Class or, in the alternative, the California Class)**

111.   Plaintiff MOORE realleges and incorporates each and every allegation contained above as if fully set forth herein and further allege as follows:

112.   Plaintiff MOORE brings this claim individually and on behalf of the other members of the California Class for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

113.   Plaintiff MORE and California Class members are consumers who purchased the Product for personal, family or household purposes. Plaintiff MOORE and the California Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff MOORE and the California Class members are not sophisticated experts with independent knowledge of the character, effectiveness, nature, grades, ratings of the manuka honey Product.

114.   The Product that Plaintiff MOORE and other Class members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

115.   Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

116.   Defendant's deceptive manuka ratings claims violate federal and California law because (i) the Product is not 100% New Zealand manuka honey, and (ii) manuka honey is not the only ingredient in the Product.

117.   California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a

sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a) (5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the Product's real ingredients and characteristics.

118.   Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the particular standard, quality or grade of the goods.

119.   Cal. Civ. Code § 1770(a) (9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

120.   Plaintiff MOORE and the California Class members are not sophisticated experts about the character, effectiveness, nature, level, grade, ratings of the Product. Plaintiff MOORE and the California Class acted reasonably when they purchased the Product based on their belief that Defendant's representations were true and lawful.

121.   Plaintiff MOORE and the California Class suffered injuries caused by Defendant because (a) they would not have purchased the Product on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Product due to Defendant's misrepresentations and deceptive manuka ratings claims and were deprived the benefit of their bargain; and (c) the Product did not have the characteristics, benefits, or quantities promised.

122.   On or about March 15, 2018, prior to filing this action, a CLRA notice letter was served on Defendant TRADER JOE'S COMPANY, which complies in all respects with California Civil Code § 1782(a). Plaintiff MOORE sent TRADER JOE'S COMPANY on behalf of herself and the Cass, a letter via certified mail, return receipt requested, advising Defendant TRADER JOE'S COMPANY that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct (unsigned) copy of Plaintiff MOORE's letter is attached hereto as **EXHIBIT C**.

123.   Wherefore, Plaintiff MOORE and the Class seek damages, restitution, and injunctive relief for Defendant's violations of the CLRA.

## COUNT V

**VIOLATION OF CALIFORNIA'S UNFAIR COMPEITION LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200,** *et seq.*

**(brought individually and on behalf of the Nationwide Class or, in the alternative, the California Class)**

124.   Plaintiff MOORE realleges and incorporates each and every allegation contained above as if fully set forth herein and further allege as follows:

125.   Plaintiff MOORE brings this claim individually and on behalf of the members of the Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

126.   The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

127.   Defendant's manuka ratings claims violate federal and California law because (i) the Product is not 100% New Zealand manuka honey, (ii) manuka honey is not the only ingredient in the Product.

128.   Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating Section 403(r) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 343, California Health & Safety Code §§ 110398, 110585, 110620, 110625, 110630, the CLRA, and other applicable law as described herein.

129.   Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers, and its failure to comply with the FDCA and California law offends the public policy advanced by food labeling laws "to protect the consumer from 'economic adulteration,' by which less expensive ingredients were substituted, or the proportion of more expensive ingredients diminished, so as to make the product, although not in itself deleterious, inferior to that which the consumer expected to receive when purchasing a product with the name under which it was sold." *Fed. Sec. Adm'r v. Quaker Oats Co.*, 318 U.S. 218, 230, 63 S. Ct. 589, 596 (1943) (citing Sen. Rep. No. 493, 73d Cong., 2d Sess., p. 10; Sen. Rep. No. 361, 74th Cong., 1st Sess., p. 10.).

130.   Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiff MOORE and the Class to believe that the manuka ratings claims made about the Product were lawful, true, and not intended to deceive or mislead the consumers.

131.   Plaintiff MOORE and the Class members are not sophisticated experts about the character, effectiveness, nature, level, grade, ratings or the antibacterial potency of the Product. Plaintiff MOORE and the California Class acted reasonably when they purchased the Product based on their belief that Defendant's representations were true and lawful.

132.   Plaintiff MOORE and the Class lost money or property as a result of Defendant's UCL violations because (a) they would not have purchased the Product on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the

Product due to Defendant's misrepresentations and deprived the benefit of their bargain; and (c) the Product did not have the characteristics, benefits, or quantities promised.

## COUNT VI

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, *et seq.*
### (brought individually and on behalf of the Nationwide Class or, in the alternative, the California Class)

133.   Plaintiff MOORE realleges and incorporate each and every allegation contained above as if fully set forth herein and further alleges as follows:

134.   Plaintiff MOORE brings this claim individually and on behalf of the Class for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

135.   Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

136.   Defendant engaged in a scheme of offering misbranded manuka honey Product for sale to Plaintiff MOORE and the Class members by way of product packaging, labeling, and other promotional materials, including the Internet. These materials misrepresented the true content and nature of the misbranded manuka honey Product. Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, et seq. in that the product packaging, labeling, and promotional materials were intended as inducements to

purchase Defendant's Product, and are statements disseminated by Defendant to Plaintiff MOORE and Class members. Defendant knew that these statements were unauthorized, inaccurate, and misleading.

137.    Defendant's deceptive manuka ratings claims violate federal and California law because (i) the Product is not 100% New Zealand manuka honey and (ii) manuka honey is not the only ingredient in the Product.

138.    Defendant violated § 17500, *et seq*. by misleading Plaintiff MOORE and the Class to believe that the manuka content claims made about the Product were true as described herein.

139.    Defendant knew or should have known, through the exercise of reasonable care that the Product was and continue to be misbranded, and that their representations about the manuka ratings were untrue and misleading.

140.    Plaintiff MOORE and the Class lost money as a result of Defendant's FAL violations because (a) they would not have purchased the Product on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Product due to Defendant's misrepresentations and were deprived of the benefit of their bargain; and (c) the Product did not have the characteristics, benefits, or quantities promised.

## COUNT VII

## VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

### N.C. Gen. Stat. § 75-1.1, *et seq.*

### (brought individually and on behalf of the North Carolina Class)

141.    Plaintiff KING realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

142.   Plaintiff KING brings this claim individually and on behalf of the other members of the Class for violations of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 (the "NCUDTPA").

143.   The NCUDTPA provides that "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1.

144.   Defendant advertises, promotes, markets and sells its Product with labeling and/or ingredient statements that communicate that the product is pure manuka.

145.   The foregoing deceptive acts and practices were directed at consumers.

146.   Any person who has been injured by reason of any violation of North Carolina General Statutes section 75-1.1 may bring an action to recover up to 5,000 dollars for each violation. N.C. Gen. Stat. § 75-15.2. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages amount fixed by the verdict. N.C. Gen. Stat. § 75-16. The court may award reasonable attorney's fees to a prevailing plaintiff. N.C. Gen. Stat. § 75-16.1.

147.   By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by mislabeling the Product or misrepresenting its ingredients.

148.   Plaintiff KING and the other Class members suffered a loss as a result of Defendant's deceptive and unfair trade practices. Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff KING and the other Class members suffered monetary losses from the purchase of Product, i.e., receiving less manuka honey than advertised. Plaintiff KING, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by N.C. Gen. Stat. § 75-16.1, actual damages, treble damages, and such other relief as this Court deems just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT VIII

## VIOLATIONS OF THE NORTH CAROLINA FRAUDULENT AND DECEPTIVE ADVERTISING LAW

### N.C. Gen. Stat. § 14-117, *et seq.*

### (brought individually and on behalf of the North Carolina Class)

149.   This claim is brought on behalf of Plaintiff KING and members of the North Carolina Class against Defendant.

150.   Plaintiff KING realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

151.   N.C. Gen. Stat. § 14-117 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising means ". . . [A]n advertisement of any sort regarding merchandise, securities, service or any other thing so offered to the public, which advertisement contains any assertion, representation or statement of fact which is untrue, deceptive or misleading . . ." N.C. Gen. Stat. § 14-117.

152.   Defendant's false advertising was known, or through the exercise of reasonable care should have been known, by Defendant to be deceptive and misleading to consumers.

153.   Defendant's affirmative misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Product were, and continue to be, exposed to Defendant's material misrepresentations.

154.   Defendant violates N.C. Gen. Stat. § 14-117 because its misrepresentations and/or omissions regarding the Product, as set forth above, were material and likely to deceive a reasonable consumer.

155.   Plaintiff KING and members of the North Carolina Class have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising. In purchasing the Product, Plaintiff KING and members of the

Class relied on the misrepresentations regarding the ingredients in the product. Those representations were false and/or misleading because around 40.05% of the Product is not manuka honey. Plaintiff KING and the Class were deprived of the benefit of their bargains when they purchased the Product and did not receive a product that was pure manuka honey.

156.   Pursuant to N.C. Gen. Stat. § 14-117, Plaintiff KING and members of the Class seek monetary damages (including actual, minimum, punitive, treble, and/or statutory damages), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IX

## COMMON LAW FRAUD

**(brought individually and on behalf of the Nationwide Class under California common law or, in the alternative, on behalf of the New York, California, and North Carolina Classes under those states' respective laws)**

157.   Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

158.   Defendant intentionally made materially false and misleading claims through its representations that its products were purely manuka honey, intending that Plaintiffs and the Class rely on them.

159.   Plaintiffs and Class members reasonably relied on Defendant's false and misleading representations and omissions. They did not know, and had no reason to know, the truth about the Product as the time they purchased it. They would not have purchased the Product had they known the truth—viz., that the Product is not pure manuka.

160.   Plaintiffs and members of the Class have been injured as a result of Defendant's fraudulent conduct and must be compensated in an amount to be determined at trial.

## COUNT X

## BREACH OF EXPRESS WARRANTIES

**(brought individually and on behalf of the Nationwide Class under California express warranty law or, in the alternative, on behalf of the New York, California, and North Carolina Classes under those states' respective laws)**

161.   Plaintiffs reallege and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

162.   Defendant provided Plaintiff and other Class members with written express warranties that (i) the only ingredient in the Product was manuka honey (ii) the product contained 100% New Zealand Manuka Honey.

163.   These claims were affirmations of fact.  These affirmations of fact became part of the basis of the bargain and created an express warranty that the good would conform to the stated promise. Plaintiff and Class members attached importance to Defendant's claims.

164.   Defendant breached the terms of its express warranty to Plaintiffs and the Class by not providing Products with the qualities promised.  Defendant provided the warranties with intent to deceive and/or reckless indifference to the truth because it did not test the honey from each hive.

165.   As a proximate result of Defendant's breach of warranties, Plaintiffs and Class members suffered damages in an amount to be determined by the Court and/or jury, in that they purchased and paid for Products that did not conform to what Defendant promised in its promotion, marketing and advertising.  They were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than was warranted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, themselves and on behalf of all other similarly situated, pray for relief and judgment against Defendant, as follows:

    a.  For an order certifying the Nationwide Class, appointing Plaintiffs AKWEI, MOORE, and KING as representatives of the Nationwide Class, and designating their counsel as counsel for the Nationwide Class;

    b.  In the alternative, for an order certifying the New York Class, appointing Plaintiff AKWEI as representative of the New York Class, and designating his counsel as counsel for the New York Class;

    c.  Also in the alternative, for an order certifying the California Class, appointing Plaintiff MOORE as representative of the California Class, and designating her counsel as counsel for the California Class;

    d.  Also in the alternative, for an order certifying the California Class, appointing Plaintiff KING as representative of the North Carolina Class, and designating her counsel as counsel for the North Carolina Class;

    e.  For all recoverable compensatory and other damages sustained by Plaintiffs and the Classes;

    f.  For an Order declaring Defendant's conduct violates the statutes referenced herein;

    g.  For an Order finding in favor of Plaintiffs and the Classes;

    h.  For actual and/or statutory damages for injuries suffered by Plaintiff and the Class and in the maximum amount permitted by applicable law;

    i.  For an Order (1) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (2) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering Defendant to engage in a corrective

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

advertising campaign; and (4) requiring Defendant to reimburse Plaintiffs and all members of the Class for their injuries;

j.  For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

k.  For an Order of restitution and all other forms of equitable monetary relief;

l.  For injunctive relief as pleaded or as the Court may deem proper;

m.  For an Order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

n.  For such other and further relief as the Court deems just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all others similarly situated, hereby demand a jury trial on all claims so triable.


Dated:  December 21, 2018


Respectfully submitted,


*/s/ C.K. Lee*
C.K. Lee, Esq.


*/s/ David A. Makman*
David A. Makman, Esq.