1   DAWN SESTITO (S.B. #214011)
    dsestito@omm.com
2   R. COLLINS KILGORE (S.B. #295084)
    ckilgore@omm.com
3   O'MELVENY & MYERS LLP
    400 South Hope Street
4   Los Angeles, California  90071-2899
    Telephone:   +1 213 430 6000
5   Facsimile:    +1 213 430 6407

6   Attorneys for Defendant
    Trader Joe's Company
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         OAKLAND DIVISION

11

12  LYNN MOORE, SHANQUE KING, and        Case No. 4:18-cv-04418-KAW
    JEFFREY AKWEI,
13                                        **DEFENDANT TRADER JOE'S
                   Plaintiffs             COMPANY'S NOTICE OF
14                                        MOTION AND MOTION TO
         v.                               DISMISS, OR, IN THE
15                                        ALTERNATIVE, MOTION TO
    TRADER JOE'S COMPANY,                 STRIKE, PLAINTIFFS' FIRST
16                                        AMENDED COMPLAINT;
                   Defendant.             MEMORANDUM OF POINTS AND
17                                        AUTHORITIES IN SUPPORT
                                          THEREOF**
18
                                          Judge:  Hon. Kandis A. Westmore
19                                        Courtroom: ___
                                          Date: Thursday, March 21, 2019
20                                        Time: 1:30 PM

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

### TO THE COURT, THE CLERK, AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT**, on Thursday, March 21 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Kandis A. Westmore, Defendant Trader Joe's Company will and hereby does move this Court to dismiss Plaintiffs' First Amended Complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendant Trader Joe's Company will and hereby does move this Court to strike allegations in Plaintiffs' First Amended Complaint under Federal Rule of Civil Procedure 12(f).

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support of the Motion, the Declaration of Collins Kilgore in support of the Motion, the papers on file in this case, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

January 18, 2019

O'MELVENY & MYERS LLP

By:   /s/ Dawn Sestito
Dawn Sestito

Attorneys for Defendant
TRADER JOE'S COMPANY

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................ 1

II.   SUMMARY OF ALLEGATIONS ................................................... 2

III.  ARGUMENT ................................................................................. 5

    A.    Legal Standards ................................................................... 5

    B.    Plaintiffs Fail to Plausibly Allege that Trader Joe's Manuka
        Honey is Adulterated with Lower Grade Honey ................................... 6

    C.    The Complaint Fails to Allege That Plaintiffs Acted Reasonably,
        a Threshold Requirement Under the Various States' Laws at
        Issue ................................................................................... 9

    D.    Plaintiffs' Claims of Fraudulent Conduct Must Be Dismissed for
        Failure to Meet Rule 9(b)'s Heightened Pleading Standard .............. 14

    E.    Plaintiffs' State Law Claims Are Preempted Because the
        Product's Ingredient List Complies with Federal Labeling
        Requirements ................................................................... 16

    F.    Plaintiffs' Assertion That It Is Misleading to Claim "Manuka
        Honey" on the Label or Ingredient Statement Is Barred by the
        Safe Harbor Doctrine ...................................................... 20

    G.    Plaintiffs' Breach of Express Warranty Claims Fail Because the
        Product Does Not Make Any Express Representation That is
        Untrue .............................................................................. 21

    H.    Plaintiffs Cannot Proceed with a Nationwide Class ........................... 22

        1.    Plaintiffs cannot apply California law to the claims of a
            nationwide class ....................................................... 22

        2.    Plaintiffs cannot bring a nationwide class based on the
            laws of other states without a named plaintiff from each
            of those states .......................................................... 24

IV.   CONCLUSION ............................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004) .......................................................................... 5, 7

*Am. Home Prods. Corp. v. Johnson & Johnson*,
  672 F. Supp. 135 (S.D.N.Y. 1987) ...................................................................... 21

*Animal Legal Def. Fund Boston, Inc. v. Provimi Veal Corp.*,
  626 F. Supp. 278 (D. Mass. Jan. 14, 1986), *aff'd*, 802 F.2d 440 (1st
  Cir. 1986) ............................................................................................................ 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... passim

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  No. 17-cv-05921-WHO, 2018 WL 1569697 (N.D. Cal. Mar. 30,
  2018) ............................................................................................................... 21-22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 6, 9

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir 2001) ............................................................................. 16

*Brazil v. Dole Food Co.*,
  935 F. Supp. 2d 947 (N.D. Cal. 2013) ............................................................. 5, 14

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ............................................................................................ 21

*Bumpers v. Cmty. Bank of N. Va.*,
  747 S.E.2d 220 (N.C. 2013) ................................................................................ 10

*Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ......................................................................... 5, 15

*Caper Corp. v. Wells Fargo Bank, N.A.*,
  578 F. App'x 276 (4th Cir. 2014) ....................................................................... 10

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
    475 F. App'x 113 (9th Cir. 2012).......................................................................20

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (Cal. 1999) ...............................................................................21

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010) ..............................................................................16

*Comwest, Inc. v. Am. Operator Servs., Inc.*,
    765 F. Supp. 1467 (C.D. Cal. 1991)......................................................................5

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000) ...........................................................................................16

*DaimlerChrysler Corp. v. Kirkhart*,
    561 S.E.2d 276 (2002).........................................................................................10

*Davison v. Kia Motors Am., Inc.*,
    No. SACV 15–00239–CJC(RNBx), 2015 WL 3970502 (C.D. Cal.
    June 29, 2015)......................................................................................................23

*Degelmann v. Advanced Med. Optics, Inc.*,
    659 F.3d 835 (9th Cir. 2011) ...............................................................................20

*Duke v. Flying J, Inc.*,
    178 F. Supp. 3d 918 (N.D. Cal. 2016)..................................................................21

*Durnford v. MusclePharm Corp.*,
    907 F.3d 595 (9th Cir. 2018)..........................................................................16, 17

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ...........................................................9, 11, 14, 21

*Forouzesh v. Starbucks Corp.*,
    714 F. App'x 776 (9th Cir. 2018)........................................................................21

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014)...................................................................23

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Frezza v. Google, Inc.*,
No. 5:12–cv–00237–RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22,
2013) .................................................................................................................23

*Hairston v. S. Beach Beverage Co.*,
No. CV 12–1429–JFW (DTBx), 2012 WL 1893818 (C.D. Cal. May
18, 2012) ...........................................................................................................11

*Hawkins v. Kroger Co.*,
906 F.3d 763 (9th Cir. 2018) ......................................................................17, 18

*Hill v. Roll Int'l Corp.*,
128 Cal. Rptr. 3d 109 (Cal. Ct. App. 2011) .......................................................10

*Hindsman v. Gen. Motors LLC*,
No. 17-CV-05337-JSC, 2018 WL 2463113, (N.D. Cal. June 1,
2018) .................................................................................................................24

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
275 F. Supp. 3d 910 (N.D. Ill. 2017) .................................................................13

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) .................................................................10

*In re Trader Joe's Tuna Litig.*,
289 F. Supp. 3d 1074 (C.D. Cal. 2017) .............................................................20

*In re Wellbutrin XL Antitrust Litig.*,
260 F.R.D. 143 (E.D. Pa. 2009) ........................................................................24

*Johnson v. Nissan N. Am., Inc.*,
272 F. Supp. 3d 1168 (N.D. Cal. Aug. 29, 2017)...............................................24

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......................................................................5, 14

*Koch v. Greenberg*,
14 F. Supp. 3d 247 (S.D.N.Y. 2014) ...................................................................6

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*Kwan v. SanMedica Int'l*,
  854 F.3d 1088 (9th Cir. 2017) ..................................................................................6

5

6

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009).....................................................................15

7

8

*Marshall v. Miller*,
  276 S.E.2d 397 (N.C. 1981) ......................................................................................6

9

10

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)...........................................................................22, 23

11

12

*McKinnis v. Kellogg USA*,
  No. CV 07-2611 ABC (RCx), 2007 WL 4766060 (C.D. Cal. Sept.
  19, 2007)....................................................................................................................11

13

14

*Medtronic, Inc.v. Lohr*,
  518 U.S. 470 (1996) .................................................................................................17

15

16

*Monini N. Am.*,
  744 F. App'x 18 (2d Cir. 2018)................................................................................14

17

18

*Perez v. Nidek Co., Ltd.*,
  711 F.3d 1109 (9th Cir. 2013)..................................................................................20

19

20

*Reeves v. PharmaJet, Inc.*,
  846 F. Supp. 2d 791 (N.D. Ohio 2012) ...................................................................20

21

22

*Route v. Mead Johnson Nutrition Co.*,
  No. CV 12–7350–GW(JEMx), 2013 WL 658251 (C.D. Cal. Feb.
  21, 2013)................................................................................................................6, 23

23

24

*Shapiro v. Berkshire Life Ins. Co.*,
  212 F.3d 121 (2d Cir. 2000) ....................................................................................10

25

26

*Solum v. CertainTeed Corp.*,
  No. 7:15–CV–114–D, 2015 WL 6505195 (E.D.N.C. Oct. 27, 2015)................10

27

28

1
2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

*Stanley v. Bayer Healthcare LLC*,
   No. 11CV862-IEG BLM, 2012 WL 1132920 (S.D. Cal. Apr. 3,
   2012) .......................................................................................................... 6

*Turner v. City & Cty of San Francisco*,
   788 F.3d 1206 (9th Cir. 2015) ................................................................... 5

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .............................................................. 5, 15

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ..................................................... 21

*Werbel v. Pepsico, Inc.*,
   No. C 09–04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ................. 11

*Wilson v. Bellamy*,
   414 S.E.2d 347 (N.C. Ct. App. 1992) ...................................................... 10

*Yastrab v. Apple Inc.*,
   173 F. Supp. 3d 972 (N.D. Cal. 2016) ..................................................... 16

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ..................................................... 5

**Statutes**

21 U.S.C. § 342 .............................................................................................. 4

21 U.S.C. § 342(a) ......................................................................................... 4

21 U.S.C. § 343(i)(2) .................................................................................... 22

21 U.S.C. § 343-1 ......................................................................................... 17

21 U.S.C. § 343-1(a)(2) ................................................................................ 18

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
(continued)

Page(s)

**Other Authorities**

FDA, Compliance Policy Guide § 515.300, Honey – Source
   Declaration (1980), available at
   https://www.fda.gov/iceci/compliancemanuals/compliancepolicygu
   idancemanual/ucm074437.htm, last updated Mar. 20, 2015 ............12, 13, 19, 21

FDA, *Proper Labeling of Honey and Honey Products: Guidance for
   Industry* (Feb. 2018), available at
   https://www.fda.gov/downloads/Food/GuidanceRegulation/Guidan
   ceDocumentsRegulatoryInformation/UCM595961.pdf..........................19, 20, 21

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................5

Fed. R. Civ. P. 12(f)..........................................................................................7

**Regulations**

21 C.F.R. § 101.4(a)(1)....................................................................................18

21 C.F.R. § 102.5(a) ..................................................................................19, 22

21 C.F.R. § 102.5(d)..............................................................................18, 19, 22

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3    It is undisputed that beekeepers cannot direct their honey bees to visit only

4    one species of flower throughout an entire season of producing honey.  As Plaintiffs

5    concede, it is impossible to wholly prevent honey bees from feeding on the pollen

6    and nectar of numerous types of flowers.  As a result, honey from a lone floral

7    source does not exist.  Clover honey is not exclusively from clover, orange blossom

8    honey is not exclusively from orange blossoms, and manuka honey—the product at

9    issue here—is not exclusively from the manuka flower.

10    Plaintiffs overlook that fact.  Instead, they allege that Trader Joe's Manuka

11    Honey is "adulterated," despite having no test results that support this erroneous

12    contention.  (To the contrary, the test results presented with Plaintiffs' First

13    Amended Complaint in fact not only fail to establish any adulteration, but also

14    prove Trader Joe's product is genuine.)  As they must, Plaintiffs reluctantly

15    concede that Trader Joe's Manuka Honey comes mostly from manuka flowers and

16    that even the priciest manuka honeys—which sell for more than ten times the price

17    of Trader Joe's product—do not contain pollen exclusively from manuka flowers.

18    Regulators in New Zealand, where all authentic manuka honey is produced,

19    recognize that honey can be labeled as "manuka honey" even if it contains the

20    pollen of other flowers.  U.S. regulators agree.

21    The New Zealand authorities who oversee the export and labeling of

22    authentic manuka honey regulate purity and potency not by rejecting honey that

23    contains pollen from other flowers—as all honeys do—but by grading honey on the

24    amount of manuka-specific chemicals and DNA markers it contains.  They consider

25    honey to be "manuka honey" so long as it contains a minimal amount of manuka

26    DNA markers and maintains sufficient levels of manuka chemicals; they do not

27    authenticate manuka honey based on pollen counts.

28    Domestically, the Food and Drug Administration takes a similarly realistic

approach, allowing producers to market their honey based on its "chief floral source." That is, honey may be labeled and advertised as "manuka honey" as long as manuka flower is the honey's primary floral source.

Plaintiffs in this case concede that manuka is the chief floral source of two honey samples—both purportedly Traders Joe's Manuka Honey—tested by a lab in New Zealand. In their First Amended Complaint, Plaintiffs suggest that the only explanation for the presence of other floral sources in the samples is that Trader Joe's "deliberately adulterates high-manuka honey," but they do not make a single allegation that plausibly indicates anything of the sort.

Plaintiffs' flawed interpretation of their own test results does not warrant burdening Trader Joe's and the courts with this misguided litigation. Their First Amended Complaint should be dismissed.

## II.   SUMMARY OF ALLEGATIONS

On December 21, 2018, Plaintiffs Lynn Moore, Shanque King, and Jeffrey Akwei filed their First Amended Class Action Complaint ("FAC").[1] Dkt. 32. Plaintiffs allege that Defendant Trader Joe's Company ("Trader Joe's") engaged in "false, misleading, and deceptive marketing and sale" of Trader Joe's Manuka Honey (the "Product") by representing that the Product is composed "entirely" of "pure manuka honey" when the Product's manuka-honey content has allegedly

---

[1] The FAC alleges the following causes of action: (1) violations of New York's Deceptive and Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349; (2) violations of New York's False Advertising Law, N.Y. Gen. Bus. Law § 350; (3) violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.; (4) violations of California's Unfair Competition Law ('UCL'), Cal. Bus. & Prof. Code § 17200, *et seq*.; (5) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*.; (6) violations of North Carolina's Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*.; (7) violations of North Carolina's Fraudulent and Deceptive Advertising Law, N.C. Gen. Stat. § 14-117, *et seq*.; (8) common law fraud; and (9) breach of express warranties. FAC ¶¶ 82–165.

"been adulterated by the inclusion of cheaper honey."  *See, e.g.*, FAC ¶¶ 9, 11, 37.

Plaintiffs plead that two of the Product's representations contributed to their alleged injuries: (1) the statement "100% New Zealand Manuka Honey" on the Product's front label; and (2) the "ingredient statement," which lists "manuka honey" as the only ingredient.[2]  *Id.* ¶¶ 5–6, 26–31.  Plaintiffs allege that tests of Product samples purportedly purchased by Plaintiffs Moore and Akwei, which they allege show that approximately 60% of the pollen in the tested honey was from the manuka flower while the remainder came from other floral sources.[3]  *Id.* ¶¶ 39–41.  Plaintiffs plead that Trader Joe's sales and marketing practices for the Product violate consumer protection and similar laws of all fifty states and the District of Columbia.  *Id.* ¶¶ 11, 14.

Although Plaintiffs assert that Trader Joe's "deliberately adulterates high-manuka honey by diluting it with less valuable low-manuka honey" and "amalgamates honey from many different hives and only afterwards measures the manuka[-]honey content of the mixture," *see id.* ¶ 61, Plaintiffs rest this assertion entirely on the test results.  They do not, however, support this assertion with any allegations indicating that Trader Joe's "omitted valuable constituents," "substituted any substance," concealed any "damage or inferiority," or added "any substance" to the Product to "increase its bulk," "reduce its quality or strength, or make it appear better or of greater value than it is."  *See id.* ¶ 15 n.7 (citing 21 U.S.C. § 342 for the

---

[2] Plaintiffs allege that two different labels of Trader Joe's Product are false or misleading.  FAC ¶¶ 4–6, 35–37.  Two of the Plaintiffs allege to have purchased the Product labeled "Manuka Honey" from Trader Joe's stores, while the other Plaintiff alleges that she purchased the Product labeled "100% New Zealand Manuka Honey" from Amazon.com.  *Id.* ¶¶ 26–31.

[3] According to the FAC, the "manuka content" of the Products purchased by Plaintiffs Moore and Akwei was allegedly 62.6% and 57.3%, respectively.  FAC ¶¶ 39–40.  The Product purchased by Plaintiff King is not alleged to have been tested.  *Id.* ¶¶ 38–41.

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

definition of adulteration under the Federal Food, Drug, and Cosmetics Act). Plaintiffs also plead no facts to support that Trader Joe's Product contains any "poisonous" or "deleterious substance which may render it injurious to health." *See* 21 U.S.C. § 342(a).

Plaintiffs concede that honey producers cannot direct their bees to visit only the manuka plant and therefore that manuka honey will contain varying contents of manuka pollen and that "there may invariably be impurities" as a result of the "natural bee gathering process."  FAC ¶¶ 45, 56.  Plaintiffs allege that "measures [can be] taken to maximize manuka purity" but acknowledge that "[r]easonable consumers know that the concentration of manuka . . . can vary significantly from brand to brand depending on what measures have been taken to maximize manuka purity."  *Id*.  ¶ 46.  Plaintiffs admit that even the most expensive manuka honey products, which charge up to $266 a jar, contain pollen from plants other than manuka.  *Id*. ¶ 56.  And they further concede that the FDA permits producers and retailers of honey products to label honey products with the "chief floral source" of the honey, although they assert that in order not to be misleading, 90% the honey must come from a particular floral source before the honey can be labeled with that floral source.  *Id*.

Plaintiffs contend that Trader Joe's actions caused Plaintiffs and similarly situated class members to purchase the Product at a "premium price."[4]  *Id.* ¶¶ 14, 26–31.  Plaintiffs believe they are entitled to injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, and costs.  *Id.* ¶¶ 13, 82–165.

---

[4] According to the FAC, a competing manuka honey product that represents its manuka honey content at 92% sells for $266 per bottle.  FAC ¶ 56.  By contrast, Trader Joe's sold the product for $13.99, far lower than the cost of the competing product referenced in the FAC.  *Id*. ¶ 55 n. 19, 20.

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

1

## III.   ARGUMENT

2

### A.   Legal Standards

3    To survive a motion to dismiss under Federal Rule of Civil Procedure

4  12(b)(6), a complaint must allege "enough facts to state a claim to relief that is

5  plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see*

6  *also* Fed. R. Civ. P. 12(b)(6); *Turner v. City & Cty. of San Francisco*, 788 F.3d

7  1206, 1210 (9th Cir. 2015).  A claim is "plausible on its face" only when the

8  complaint "pleads factual content that allows the court to draw the reasonable

9  inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

10  556 U.S. 662, 677–78 (2009).  While a court must accept factual allegations as true

11  at this stage, a pleading that, like the FAC, "offers labels and conclusions or a

12  formulaic recitation of the elements of a cause of action will not do." *Id*. at 678

13  (internal quotation marks and citations omitted); *see also Adams v. Johnson*, 355

14  F.3d 1179, 1183 (9th Cir. 2004) ("[C]onclusory allegations of law and unwarranted

15  inferences are insufficient to defeat a motion to dismiss.").

16    Moreover, claims that hinge on fraud, like those asserted here, must be

17  pleaded with particularity under Rule 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317

18  F.3d 1097, 1103 (9th Cir. 2003) ("Rule 9(b) applies to 'averments of fraud.'");

19  *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125–27 (9th Cir. 2009) (applying Rule

20  9(b) to UCL and CLRA claims) (citation omitted); *Brazil v. Dole Food Co*., 935 F.

21  Supp. 2d 947, 963–64 (N.D. Cal. 2013) (applying Rule 9(b) to CLRA, FAL, and

22  UCL claims); *see also Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp.

23  1467, 1470–71 (C.D. Cal. 1991).  Rule 9(b) requires a plaintiff to describe with

24  particularity the allegedly fraudulent statement, identify who made it, note where

25  and when it was made, show that it was false when made, and describe how it was

26  false.  *Kearns*, 567 F.3d at 1124; *Cafasso ex rel. United States v. Gen. Dynamics*

27  *C4 Sys., Inc.,* 637 F.3d 1047, 1055 (9th Cir. 2011); *Yumul v. Smart Balance, Inc*.,

28

- 5 -

733 F. Supp. 2d 1117, 1123 (C.D. Cal. 2010).  All "averments which do not meet that standard should be 'disregarded' or 'stripped' from the claim for failure to satisfy Rule 9(b)."  *Kearns*, 567 F.3d at 1124 (citation omitted).

A plaintiff asserting claims under California's Consumers Legal Remedies Act ("CLRA") and California's Unfair Competition Law ("UCL") bears the burden of proving that the challenged representations are false or misleading.  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095–96 (9th Cir. 2017); *see also Stanley v. Bayer Healthcare LLC*, No. 11CV862–IEG BLM, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012).  Under the New York General Business Law ("GBL") sections 349 and 350, a plaintiff bears the burden of proving that the challenged representations are "deceptive or misleading in a material way."  *Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) (citations omitted).  To state a claim for relief under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") section 75-1.1, a plaintiff must plausibly allege that the defendant committed an unfair or deceptive act or practice that "has the capacity or tendency to deceive."  *Marshall v. Miller*, 276 S.E.2d 397, 548 (N.C. 1981).

Finally, under Rule 12(f), the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A court may strike nationwide class allegations under Rule 12(f) if they are unsustainable on the face of the complaint.  *Route v. Mead Johnson Nutrition Co.*, No. CV 12–7350–GW(JEMx), 2013 WL 658251, at *7–9 (C.D. Cal. Feb. 21, 2013).

## B.   Plaintiffs Fail to Plausibly Allege that Trader Joe's Manuka Honey is Adulterated with Lower Grade Honey

Plaintiffs' test results, which indicate the presence of pollen from plants other than manuka, are insufficient to plausibly support the conclusion that Trader Joe's has adulterated its Product.  *See Twombly*, 550 U.S. at 570 (a complaint must allege

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

1  "enough facts to state a claim to relief that is plausible on its face").  In particular,

2  Plaintiffs allege that Trader Joe's has included "cheaper honey" in the product.

3  FAC ¶ 9; *see id*. ¶ 19 (alleging Trader Joe's has engaged in "economic

4  adulteration" by substituting "less expensive ingredients" that are "inferior" to what

5  customers expect); *id*. ¶ 57 (alleging that Trader Joe's included "honey from other

6  cheaper floral blossoms").

7      Plaintiffs' assertion that the Product is "adulterated," however, is a legal

8  conclusion.  *See Adams*, 355 F.3d at 1183 ("[C]onclusory allegations of law and

9  unwarranted inferences are insufficient to defeat a motion to dismiss.").  To plead a

10  plausible claim for relief on the basis that Trader Joe's has adulterated its product,

11  Plaintiffs' alleged facts must permit "the reasonable inference" that Trader Joe's is

12  misleading consumers by adding non-manuka honey to dilute the product.  *See*

13  *Iqbal*, 556 U.S. at 678.

14      Plaintiffs' *only* factual basis for asserting that Trader Joe's engaged in

15  fraudulent conduct is their allegation that test results show samples of Trader Joe's

16  Product purportedly contained approximately 60% pollen from the manuka flower,

17  with the remainder of the pollen coming from other plants.  FAC ¶ 56; FAC Ex. B

18  at 55–56.  The test results themselves show that Plaintiffs' two samples returned

19  manuka pollen counts of 62.6% and 57.3% respectively, while none of the other

20  floral sources in either sample accounted for even 10% of the pollen count.[5]  FAC

21  Ex. B at 55–56.

22      But instead of supporting Plaintiffs' conclusion that the pollen from other

23  plants came from other honeys, Plaintiffs' other allegations support only the

24  inference that these pollens were introduced to the honey by bees that visited plants

25

26  _____

27  [5] Most of these floral sources—kanuka, kamahi, hinaus dentatus, pohutukawa,
   rewarewa, puka, and tawheowheo, for example—are species of wild plants native
28  to New Zealand.

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

1   other than the manuka tree.  Plaintiffs admit that manuka honey producers cannot

2   strictly control which flowers their bees visit and therefore must rely on hive

3   placement and harvesting techniques to "increase the concentration of [m]anuka

4   [h]oney in a given batch."  FAC ¶ 45 (quoting manuka producers explaining that

5   "bees don't listen very well, and we can't tell them to only work the [m]anuka

6   flowers").  Plaintiffs' source for this allegation explains that it is "impossible" to

7   produce manuka honey that does not contain pollen from other plant sources.[6]

8   Kilgore Decl. Ex. 2 at 7.  And Plaintiffs admit that as a result, the "concentration of

9   manuka as opposed to other honey pollens can vary significantly from brand to

10  brand."  FAC ¶ 46.

11      Plaintiffs also allege that a seller of premium manuka honey, allegedly

12  costing $266 for a 12-ounce jar, promises a manuka pollen count of only 92%.  *Id.*

13  ¶ 56.  That is, Plaintiffs concede that even the most expensive manuka products

14  contain pollen from other plants.  Accordingly, the presence of other pollens does

15  not support a reasonable inference that the pollens were introduced by mixing less

16  costly honeys with manuka honey.  *See Iqbal*, 556 U.S. at 677–78.  And Plaintiffs

17  allege no other factual basis for concluding that the pollen from other flowers in the

18  samples they tested came from the inclusion of other honeys rather than from

19  manuka-visiting bees that also visited other plants.

20      Plaintiffs' theory also defies logic.  They assert that purer manuka honey

21  sells for more than $20 an ounce while clover honey sells for just 28 cents an

22  ounce.  FAC ¶ 56.  They liken this to mixing top-shelf Scotch with cheaper whisky

23  and selling it for a premium price.  *Id.* ¶ 58.  But this analogy breaks down because

24  Trader Joe's sells its product for $13.99, or $1.59 an ounce—dramatically less than

25

26  _____

    [6] Plaintiffs excised from the quoted passage that it is "impossible to get 100% pure
27  [m]anuka [h]oney out of a hive because there will inevitably be some non-[m]anuka
    nectar that the bees will get into."  Kilgore Decl. Ex. 2 at 7.
28

MEM. ISO MOT. TO DISMISS OR
                                      STRIKE FIRST AMEND. COMPL.
                                      4:18-CV-04418-KAW

1  the premium price other products command, according to the FAC.[7]  *See id*. ¶ 55 at

2  n.19, 20.  These allegations carry the opposite inference than Plaintiffs wish to

3  draw: It is much more likely the Product contains pollen from sources other than

4  the manuka flower not because it is the product of mixing two varieties of honey

5  but because the bees that produced it collected nectar from other flowers, in

6  addition to manuka.  *See Iqbal*, 556 U.S. at 680 (explaining that the plaintiffs in

7  *Twombly* failed to plausibly allege an unlawful agreement because defendants'

8  behavior was "not only compatible with, but indeed was more likely explained by"

9  lawful behavior).  Plaintiffs' allegations should be dismissed for failure to state a

10  claim because they do not support a reasonable inference that Trader Joe's Product

11  is adulterated.  *See id*. at 687.

### C.  The Complaint Fails to Allege That Plaintiffs Acted Reasonably, a Threshold Requirement Under the Various States' Laws at Issue

14  Plaintiffs' California, New York, and North Carolina state-law claims should

15  be dismissed because they fail to argue that a reasonable consumer would have

16  believed the Product contained only manuka pollen.  *See Ebner v. Fresh, Inc.*, 838

17  F.3d 958, 965–66 (9th Cir. 2016) (dismissing CLRA, FAL, and UCL claims

18  because the size of a tube of lip balm would not mislead a reasonable consumer into

19  believing it contained more product than it did); *Shapiro v. Berkshire Life Ins. Co.*,

20  212 F.3d 121, 126 (2d Cir. 2000) (defining a "deceptive act or practice" under New

---

[7] If Trader Joe's could fetch up to $250 a jar by selling honey with a higher concentration of manuka pollen, as Plaintiffs allege, then Trader Joe's alleged adulteration of its product to lower the concentration of manuka pollen would makes it far less valuable.  Plaintiffs concede that "the concentration of manuka as opposed to other honey pollens can vary significantly from brand to brand" and therefore the "value of honey increases in proportion to the amount of it that is made from manuka."  FAC ¶ 46.  The only inference from these allegations is that it is quite difficult and expensive to ensure very high concentrations of manuka pollen in a batch.  It would make no economic sense for Trader Joe's to slightly dilute highly valuable honey only to sell it for ten times less.

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

1   York's GBL § 349 as "a representation or omission likely to mislead a reasonable

2   consumer acting reasonably under the circumstances") (internal quotation and

3   citation omitted); *Solum v. CertainTeed Corp.*, No. 7:15–CV–114–D, 2015 WL

4   6505195, at \*5 (E.D.N.C. Oct. 27, 2015) (citing *Caper Corp. v. Wells Fargo Bank,*

5   *N.A.*, 578 F. App'x 276, 287 (4th Cir. 2014) ("Under North Carolina law, reliance

6   upon a representation is reasonable only when the recipient of the representation

7   'use[s] reasonable care to ascertain the truth of that representation.'"); *Bumpers v.*

8   *Cmty. Bank of N. Va.*, 747 S.E.2d 220, 227 (N.C. 2013) ("Reliance is not

9   reasonable where the plaintiff could have discovered the truth of the matter through

10  reasonable diligence, but failed to investigate.") (citation omitted); *In re ConAgra*

11  *Foods, Inc.*, 90 F. Supp. 3d 919, 985 (C.D. Cal. 2015) (class claims for breach of

12  express warranty is only appropriate if plaintiffs show the alleged misrepresentation

13  was material to a reasonable consumer).[8]

14         The "reasonable consumer" is not the "least sophisticated" or "unwary"

15  consumer.  *Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 115–16 (Cal. Ct. App.

16  2011).  Thus, a plaintiff's allegation that she herself was personally deceived is

17  insufficient to show that a reasonable consumer is likely to be deceived.  *See id*.

18  There must be "more than a mere possibility that [a] label might conceivably be

19  misunderstood by some few consumers viewing it in an unreasonable manner. . . .

20  Rather, the reasonable consumer standard requires a probability that a significant

21

22  _____

    [8] The First Amended Complaint also alleges violations of N.C. Gen. Stat. § 14-117.
23  This statute is a criminal statute, and therefore cannot form the basis for civil
    liability.  Plaintiffs do not represent the State of North Carolina, and all claims
24  stemming from § 14-117 must be dismissed.  *See Wilson v. Bellamy*, 414 S.E.2d
    347, 357 (N.C. Ct. App. 1992) (finding that "no civil right can be predicated upon
25  the mere violation of a criminal statute") (citation omitted); *see also*
    *DaimlerChrysler Corp. v. Kirkhart*, 561 S.E.2d 276, 283 (2002) ("[T]he crime is an
26  offense against the public pursued by the sovereign.") (internal citations and
27  quotation marks omitted).

28

MEM. ISO MOT. TO DISMISS OR
                                         STRIKE FIRST AMEND. COMPL.
                                         4:18-CV-04418-KAW

1    portion of the general consuming public . . . , acting reasonably in the

2    circumstances, could be misled." *Ebner*, 838 F.3d at 965 (internal quotation marks

3    and citations omitted).  If the Court concludes a reasonable consumer would not be

4    deceived by the Product's packaging, "dismissal is appropriate." *Hairston v. S.*

5    *Beach Beverage Co.*, No. CV 12–1429–JFW (DTBx), 2012 WL 1893818, at *4

6    (C.D. Cal. May 18, 2012); *see Werbel v. Pepsico, Inc.*, No. C 09–04456 SBA, 2010

7    WL 2673860, at *3–5 (N.D. Cal. July 2, 2010) (holding no reasonable consumer

8    would believe that Cap'n Crunch's "Crunch Berries" cereal contained real fruit

9    berries); *McKinnis v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 WL

10   4766060, at *3–5 (C.D. Cal. Sept. 19, 2007) (dismissing UCL, FAL, and CLRA

11   claims because no reasonable consumer would believe "Froot Loops" contain real

12   fruit).

13          Trader Joe's Product would not mislead a reasonable consumer.  No

14   reasonable consumer would expect the Product, or any type of honey, to achieve the

15   impossible by having a single floral source.  What's more, a reasonable consumer

16   of manuka honey would understand that the Product's label and price both suggest

17   the Product is not among the highest-grade manuka honeys.  The Product's label

18   prominently displays a purity rating—a 10+ grading under Unique Manuka Factor

19   ("UMF") standards—much lower than that of other manuka honeys.  A reasonable

20   consumer of manuka honey would understand that the Product's grading under

21   UMF standards indicates it has less manuka content than products with higher

22   ratings, like 15+ or 22+.  The Product's price—$13.99—also suggests it has less

23   manuka content than honeys that sell for hundreds of dollars.

24          ***All honey contains pollen from multiple sources.***  A reasonable consumer

25   would not expect the Product to contain only honey from the nectar of manuka

26   flowers.  All honey contains pollen from multiple sources because, as Plaintiffs

27   concede, honey producers cannot fully control which flowers bees visit.  FAC ¶ 45;

28

                                        - 11 -              MEM. ISO MOT. TO DISMISS OR
                                                           STRIKE FIRST AMEND. COMPL.
                                                           4:18-CV-04418-KAW

1    *see* Kilgore Decl. Ex. 2 at 7 ("it's still impossible to get 100% pure [m]anuka

2    [h]oney out of a hive because there will inevitably be some non-[m]anuka nectar

3    that the bees will get into").  In fact, Plaintiffs allege that "[r]easonable consumers

4    know that the concentration of manuka as opposed to other honey pollens can vary

5    significantly from brand to brand depending on what measures have been taken to

6    maximize manuka purity."  FAC ¶ 46.

7         This reality is consistent with FDA industry guidance, which since 1980 has

8    permitted honey producers to label honey products with their "chief floral source."

9    FDA, Compliance Policy Guide § 515.300, Honey – Source Declaration (1980).[9]

10   Producers can call their products "clover honey" or "orange blossom honey"

11   because the chief floral sources are the clover plant or orange blossom,

12   respectively.  *Id.*  Reasonable consumers of honey products do not expect that when

13   they buy clover honey, orange blossom honey, or manuka honey, they are paying

14   for honey that is produced exclusively from the nectar of clovers, orange blossoms,

15   or manuka flowers.

16        Plaintiffs assert that the use of the term "manuka honey" on the Product's

17   ingredient statement (or "100% New Zealand Manuka Honey" on the Product

18   allegedly purchased by Plaintiff Moore) misled consumers into believing the

19   Product contains "pure manuka honey, not a blend of manuka honey and other

20   honeys."  FAC ¶ 37.  But the Product labeling is accurate.  Plaintiffs in fact

21   received **only** manuka honey, not a blend of honeys.[10]

22

23   [9] Plaintiffs contend that "chief floral source" is undefined, should be interpreted to

24   mean "would not deceive consumers," and that honey may only be called "manuka honey" where it contains "at least 90%" manuka pollen.  FAC ¶ 56.  Plaintiffs give

25   no explanation why "chief floral source" would mean 90% rather than any number

26   over 50%, or even that the pollen from the declared flower is simply more prominent than any other source.

27   [10] The phrase "100% New Zealand Manuka Honey" is accurate whether the

28   consumer interprets the "100%" to refer to the manuka honey or to the fact that the

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

*The Product's 10+ grading under UMF standards advertised its purity relative to other manuka products.*  A reasonable consumer of manuka honey would know that language indicating a 10+ grading under UMF standards prominently displayed on the Product indicates that it is not at the top end of the manuka purity scale.[11]  According to Plaintiffs' own sources, manuka honey producers commonly label their products with language indicating grading under UMF standards to indicate a product's purity.  *See* Kilgore Decl. Ex. 2 at 8 ("Manuka honey should be labeled with a rating on the UMF (Unique Manuka Factor) scale."); *id.* Ex. 1 at 3, Ex. 3 (showing scale of UMF ranging in purity from 10+ to 22+).  Reasonable consumers of specialty products are familiar with common traits of those products, and a reasonable consumer of manuka honey would understand the Product's purity based on its grading under UMF standards. *See e.g.*, *Ebner,* 838 F.3d at 967 (consumers of high-end lip gloss know and expect that some product remains in the tube to anchor the gloss and that the tube will contain a screw mechanism to advance the product out of the tube and a weighted bottom to keep the tube upright).

---

honey comes entirely from New Zealand.  *See In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 926 (N.D. Ill. 2017) (where the phrase "100% Grated Parmesan Cheese" on the label could mean the product contained only Parmesan cheese, that the cheese in the product is 100% Parmesan, or that it is 100% grated, a reasonable consumer would look elsewhere on the label to resolve the ambiguity).  To the extent a customer were confused about whether the phrase promised that the Product contained only pollen from the manuka flower, a reasonable consumer would consult other indicia of the honey's purity levels to resolve the ambiguity—specifically the grading under UMF standards, which indicates the Product does not claim to be among the most potent manuka honey products.  *Id.*

[11] New Zealand's independent commission, the Unique Manuka Factor ("UMF") Honey Association, uses the UMF grading system to grade the purity of exported manuka honey based on numbers between at least 5 and 26 that "represent[] the unique signature compounds characteristic of [manuka honey] which ensure purity and quality."  *See* Kilgore Decl. Ex. 1 at 3.

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

***The retail price of Trader Joe's Product reflects its purity.*** A reasonable consumer of manuka honey would not expect that a product priced at $13.99 would contain almost 100% manuka pollen because such a product would be many times more expensive. Plaintiffs concede that the "value of honey increases in proportion to the amount of it that is made from manuka" and that reasonable consumers understand that manuka concentration varies among brands. FAC ¶ 46. Plaintiffs claim that they "care a great deal about the purity" of manuka honey and understand that its healthful properties "depend on the specific purity level." *Id.* ¶ 44. They also allege that manuka honey products of very high purity—those advertising a manuka pollen count of 90% or more—will fetch hundreds of dollars at retail. *Id.* ¶ 56. Reasonable consumers understand that product prices reflect the quality of the contents, particularly where the product contains rare or premium ingredients. *See Jessani v. Monini N. Am.*, 744 F. App'x 18, 19–20 (2d Cir. 2018) (affirming dismissal of New York and California consumer protection claims where oil marketed as "Truffle Flavored" contained synthetic truffle flavoring because a reasonable consumer would not expect that oil priced at only $11.95 to $20.95 was flavored with real truffles).

### D.   Plaintiffs' Claims of Fraudulent Conduct Must Be Dismissed for Failure to Meet Rule 9(b)'s Heightened Pleading Standard

Plaintiffs' FAC is rife with assertions that have no factual support, lack particularity, and should therefore be dismissed. *See Kearns*, 567 F.3d at 1124 ("averments which do not meet that standard should be 'disregarded' or 'stripped' from the claim for failure to satisfy Rule 9(b)") (citation omitted). Rule 9(b) applies to all of Plaintiffs' claims because they each allege that Trader Joe's fraudulently represented that the Product is contains only manuka honey when it is allegedly adulterated with lower-quality honey. *See id.* at 1125 (applying Rule 9(b) to UCL and CLRA claims); *Brazil*, 935 F. Supp. 2d at 963–64 (applying Rule 9(b)

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

1  to CLRA, FAL, and UCL claims).  Plaintiffs have not sufficiently pled that Trader

2  Joe's engaged in fraud by adulterating the Product with non-manuka honey such

3  that the use of the term "manuka honey" on the label is false and misleading, nor

4  have they alleged any other affirmative misrepresentation made by Trader Joe's,

5  such as that the manuka honey is not as potent as the 10+ grading under UMF

6  standards displayed on the label.  *See Marolda v. Symantec Corp.*, 672 F. Supp. 2d

7  992, 1001 (N.D. Cal. 2009) ("The falsity of the representation must [] be alleged

8  with particularity.").

9       Plaintiffs' central allegation is that the Product's labeling as "manuka honey"

10  is false and misleading because Trader Joe's "deliberately adulterates high-manuka

11  honey by diluting it with less valuable low-manuka honey."  FAC ¶ 61.  Yet

12  Plaintiffs' factual allegations do not support this assertion and they therefore fail to

13  meet their heightened pleading burden under Federal Rule of Civil Procedure 9(b).

14  *See Marolda*, 672 F. Supp. 2d at 1001 (plaintiffs must allege with particularity how

15  the representation is false); *see also Cafasso,* 637 F.3d at 1055 (9th Cir. 2011) (a

16  plaintiff asserting fraud must allege "the who, what, when, where, and how of the

17  misconduct charged") (internal quotation marks and citations omitted).

18       Plaintiffs' test results do not indicate that Trader Joe's has mixed in lower-

19  value honey as alleged because honey naturally includes pollen from various floral

20  sources.  Plaintiffs have alleged no evidence that Trader Joe's Product contains

21  pollens that would be present only had other honey been mixed into the Product.

22  Neither have Plaintiffs alleged any reports from witnesses claiming to have

23  knowledge that Trader Joe's adulterated the product with lesser-value honey.  In

24  short, Plaintiffs have not stated with any particularity "what is false or misleading

25  about a statement, and why it is false."  *Vess*, 317 F.3d at 1106 (internal citations

26  and quotations omitted); *see Marolda*, 672 F. Supp. 2d at 1001.  By failing to plead

27  with specificity Trader Joe's allegedly fraudulent acts, Plaintiffs have failed to

28

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

provide Trader Joe's "notice of the particular misconduct which is alleged to constitute [] fraud." *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 976 (N.D. Cal. 2016).

Accordingly, Plaintiffs' claims, each of which alleges fraud, must be dismissed. *See e.g.*, *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir 2001); *Vess*, 317 F.3d at 1106.

### E.    Plaintiffs' State Law Claims Are Preempted Because the Product's Ingredient List Complies with Federal Labeling Requirements

Plaintiffs state-law claims about the Product's labeling should be dismissed because they seek to impose food-labeling standards different from those set forth in the Federal Food, Drug, and Cosmetic Act ("FDCA") and by the Food and Drug Administration ("FDA"). *See, e.g.*, *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 (9th Cir. 2018) (state law food misbranding claims preempted where they sought to impose standards different from those developed by the FDA).

Under the Supremacy Clause of the United States Constitution, federal law preempts state law when "(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks and citation omitted). These three types of preemption are commonly referred to as express preemption, conflict preemption, and field preemption, the latter two of which are types of "implied preemption." *Id.*; *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000).

Plaintiffs' ingredient-statement claims about the listing of "manuka honey" as the sole ingredient are expressly preempted because the Products comply with federal ingredient list requirements by listing the single ingredient by its common

1   or usual name.  The FDCA, as amended by the Nutrition Labeling and Education

2   Act ("NLEA"), sets forth uniform standards for food labeling and expressly

3   preempts any food labeling requirement that is not identical to federal law.  21

4   U.S.C. § 343-1; *see also Durnford*, 907 F.3d at 601; *Hawkins v. Kroger Co.*, 906

5   F.3d 763, 769–70 (9th Cir. 2018).  Where a federal statute contains an express

6   preemption provision, the court's task "is to interpret the provision and identify the

7   domain expressly preempted by that language." *Chae*, 593 F.3d at 942 (quoting

8   *Medtronic, Inc.v. Lohr*, 518 U.S. 470, 464 (1996)) (internal quotations omitted).

9       Ingredient statements, such as the listing of "manuka honey" at issue here,

10  are governed by the NLEA, 21 U.S.C. § 343(i)(2): "A food shall be deemed to be

11  misbranded …[u]nless its label bears …the common or usual name of each []

12  ingredient."  The NLEA's express preemption provision explicitly incorporates

13  section 343(i)(2).  21 U.S.C. § 343-1(a)(2) ("[N]o State …may directly or indirectly

14  establish under any authority or continue in effect as to any food in interstate

15  commerce …any requirement for the labeling of food of the type required by

16  section …343(i)(2).").  The labeling of ingredients falls clearly within the "domain"

17  of the NLEA's express preemption provision, and any state mislabeling claim

18  seeking to enforce a *different* result is expressly preempted by the FDCA and FDA

19  regulations.

20      The FDA's regulations reiterate the ingredient list requirements of 21 U.S.C.

21  § 343(i)(2) while also further defining "common or usual name." *See* 21 C.F.R. §

22  101.4(a)(1) ("Ingredients required to be declared on the label or labeling of a food

23  …shall be listed by common or usual name.").  "Common or usual name" is

24  defined in 21 C.F.R. § 102.5(a):

25          The common or usual name of a food, which may be a coined term,
        shall accurately identify or describe, in as simple and direct terms as
26          possible, the basic nature of the food or its characterizing properties or
        ingredients.  The name shall be uniform among all identical or similar
27          products and may not be confusingly similar to the name of any other
        food that is not reasonably encompassed within the same name.  Each
28

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods.

The regulation states, "A common or usual name of a food may be established by common usage or by establishment of a regulation in subpart B of this part, in part 104 of this chapter, in a standard of identity, or in other regulations in this chapter." 21 C.F.R. § 102.5(d); *see also Durnford*, 907 F.3d at 602 ("[FDA] regulations have the same preemptive effect as a statute."); *Hawkins*, 906 F.3d at 770 ("[I]f FDA regulations expressly permit [a] claim . . . on the face of a product's packaging, any state law claim to the contrary would be preempted.").

Plaintiffs argue that "manuka honey" is not the common or usual name of the ingredient because the honey is allegedly adulterated.  FAC ¶ 16.  They assert the Product's common or usual name should be "[m]anuka-based honey blend," though they provide no evidence of "common usage" or citation to a regulation adopting that phrase within the meaning of 21 C.F.R. § 102.5(d).  The allegation depends entirely on Plaintiff's unsupported and implausible assertion that the product is adulterated.

Plaintiff's contention that "manuka honey" is not the common or usual name of the Product directly contravenes FDA regulations, FDA guidance, industry norms, Plaintiffs' own secondary source citations, and Plaintiffs' test results.  FDA regulations state that the "common or usual name" of a food can be a "coined term" or "established by common usage."  21 C.F.R. §§ 102.5(a), (d).  The FDA has issued industry guidance for honey labeling that expressly permits producers to declare the floral source of honey so long as the identified floral source is the "chief floral source."  *See* FDA, Proper Labeling of Honey and Honey Products: Guidance for Industry (Feb. 2018) (hereinafter "Honey Labeling Guidance")[12]; *see also* FDA,

---

[12] *Available at* https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/UCM595961.pdf.

- 18 -

Compliance Policy Guide § 515.300, Honey – Source Declaration (1980) (hereinafter "Source Declaration")[13] ("A honey may be labeled with the name of the plant or blossom provided that the particular plant or blossom is the chief floral source of the honey, such as 'Orange Blossom Honey' or 'Clover Honey,' and provided that the honey producer is in a position to demonstrate that the plant or blossom designated on the label constitutes the chief floral source of the honey.").[14]

The FDA states that the common or usual name of food that contains only honey is either "honey" or, if a plant or blossom is the chief floral source of the honey, the "common or usual name may also include the source of the honey, such as 'Clover Honey,' on the label."  Honey Labeling Guidance, at 5.

Because "manuka honey" is the common or usual name wherever the chief floral source of the honey is manuka, Plaintiffs can only prevail if they can allege the Product's chief floral source is not manuka—a possibility that is foreclosed by the very tests they commissioned.  Plaintiffs' test results showing that the manuka pollen concentration in the alleged samples of the Product ranges from 57.3% to 62.6%.  FAC Ex. B at 55–56.  These numbers show that most of the pollen in the samples is from the manuka flower, making manuka the "chief floral source."  Indeed, no other floral source accounts for even 10% of the pollen in the samples.  *Id.* (in one sample, kanuka is the second most prominent source at 9.8%; in the

---

[13] *Available at* https://www.fda.gov/iceci/compliancemanuals/compliancepolicyguidancemanual/ucm074437.htm, *last updated* Mar. 20, 2015.

[14] Trader Joe's does not argue that the FDA's guidance documents are legally binding, or that they have any preemptive effect on their own.  Rather, the FDA guidance documents inform the intended "domain" of 21 U.S.C. § 343(i)(2) and 21 C.F.R. §§ 102.5(a) and (d) by defining the "common or usual name" of the ingredient that is required under federal law.  Therefore, a product that uses the name of an ingredient as provided by the guidance documents cannot be in violation of the statutory and regulatory mandates.  Where there has been no violation of federal law, state law claims cannot survive an express preemption provision, and the claims must be dismissed.

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

1    other, clover is the second most prominent at 8.9%).  Therefore, the FDA's

2    definition of the common or usual name for honey prevails over Plaintiffs' claim

3    that the term "manuka honey" on the label is misleading and that it should be

4    replaced by "[m]anuka-based honey blend."  *See Carrea v. Dreyer's Grand Ice*

5    *Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (finding claims that sought to

6    "enjoin and declare unlawful the very statement that federal law permits and

7    defines" would "impose a burden through state law that is not identical to" FDA

8    requirements, and were "therefore expressly preempted.") (citing *Degelmann v.*

9    *Advanced Med. Optics, Inc.*, 659 F.3d 835, 840–42 (9th Cir. 2011)).[15]

10         **F.    Plaintiffs' Assertion That It Is Misleading to Claim "Manuka**
11              **Honey" on the Label or Ingredient Statement Is Barred by the**
              **Safe Harbor Doctrine**

12         Because Trader Joe's Product complies with the ingredient-list requirements

13   of the FDCA and the FDA, the safe-harbor doctrine bars Plaintiffs' claims as a

14   matter of law.  The safe-harbor doctrine creates an absolute barrier to imposing

---

15

16   [15] Plaintiffs' claims are also impliedly preempted because the substance of those
     claims is to enforce the FDCA where they claim that the Product's labeling violates
17   federal law, including by not using the common or usual name or by labeling honey
     in a manner that is misleading.  *See Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1117–
18   19 (9th Cir. 2013) (a plaintiff cannot sue a defendant simply because that
     defendant's product labels allegedly violate the FDCA); *Buckman Co. v. Plaintiffs'*
19   *Legal Comm.*, 531 U.S. 341, 347–53 (2001) (state-law claims that exist solely by
     virtue of FDCA requirements are impliedly preempted because Congress intended
20   that the Act's requirements be enforced exclusively by the FDA); *Animal Legal*
     *Def. Fund Boston, Inc. v. Provimi Veal Corp.*, 626 F. Supp. 278, 283 (D. Mass. Jan.
21   14, 1986), *aff'd*, 802 F.2d 440 (1st Cir. 1986) (complaint about veal labeling and
     adulteration preempted to the extent it was "based on violations of the FDCA or the
22   parallel Massachusetts statute"); *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791,
     797 (N.D. Ohio 2012) (same as to claims about alleged failure of defendant without
23   FDA pre-approval); *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1085
24   (C.D. Cal. 2017) (dismissing claims for violations of New York General Business
     Law §§ 349 and 350 as preempted where the plaintiff's "true purpose" was to
25   enforce the FDCA through state-law claims where the state had not adopted a
26   parallel statutory scheme).

27

28

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

1   liability on defendants who otherwise comply with federal and state laws.  *See Cel-*

2   *Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (Cal. 1999)

3   (plaintiffs may not bring an action under the UCL if the defendants have complied

4   with and are therefore immune under some other law); *Ebner*, 838 F.3d at 963

5   (product labeling that is affirmatively permitted by the FDCA falls within the safe

6   harbor doctrine, which bars unfair competition claims under the UCL, CLRA, and

7   FAL); *Am. Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 144

8   (S.D.N.Y. 1987) ("compliance with FDA …requirements is a complete defense" to

9   N.Y. GBL §§ 349 and 350 consumer protection law claims under safe harbor);

10  *Duke v. Flying J, Inc.*, 178 F. Supp. 3d 918, 926 (N.D. Cal. 2016) (North Carolina

11  provides a safe harbor to NCUDTPA liability "where the alleged misconduct is

12  required or specifically permitted by federal or state law").  Trader Joe's complies

13  with the FDCA and with FDA requirements by labeling the Product with "manuka

14  honey," the common or usual name of the only ingredient.  *See* 21 U.S.C. §

15  343(i)(2); 21 C.F.R. § 102.5(a), (d); *see also* Honey Labeling Guidance; Source

16  Declaration.

17          **G.    Plaintiffs' Breach of Express Warranty Claims Fail Because the
                    Product Does Not Make Any Express Representation That is
18                  Untrue**

19          Plaintiffs cannot rest their breach of express warranty claims on their

20  implausible and unreasonable interpretation of the term "manuka honey" as

21  promising a higher amount of manuka pollen than the product contains.  *See*

22  *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 895 (C.D. Cal. 2013)

23  (dismissal is appropriate where the product representations "lack[] any context

24  indicating the scope of what is being warranted"); *see also Forouzesh v. Starbucks*

25  *Corp.*, 714 F. App'x 776, 777 (9th Cir. 2018) (dismissing breach of express

26  warranty claims where the complaint failed to adequately allege that the defendant

27  represented that its iced drinks would contain a specific amount of liquid); *Becerra*

28

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

1   *v. Dr Pepper/Seven Up, Inc.*, No. 17–cv–05921–WHO, 2018 WL 1569697, at *7

2   (N.D. Cal. Mar. 30, 2018) (dismissing plaintiff's breach of express warranty claim

3   that was premised on the same failing theory of its other consumer protection law

4   claims).  Plaintiffs' assumptions about the contents of the product are not

5   reasonable for the reasons stated in Section C, particularly because they understand

6   that manuka honey products contain pollen from other sources, the Product states

7   its relative potency by indicating a 10+ grading under UMF standards, and the

8   Product is priced far below more concentrated manuka honeys.

9       **H.     Plaintiffs Cannot Proceed with a Nationwide Class**

10          **1.     Plaintiffs cannot apply California law to the claims of a
               nationwide class.**

11

12      The Complaint also impermissibly seeks to apply California law to the

13   claims of a putative nationwide class.  In *Mazza v. Am. Honda Motor Co.*, the

14   plaintiffs—like Plaintiffs here—asserted claims under the CLRA, FAL, and UCL,

15   as well as a claim for unjust enrichment, and sought to certify a nationwide class as

16   to all these claims.  666 F.3d 581, 587 (9th Cir. 2012).  Applying California's

17   choice-of-law rules, the Ninth Circuit found three reasons why "each class

18   member's consumer protection claim should be governed by the consumer

19   protection laws of the jurisdiction in which the transaction took place," which

20   precluded certification of a nationwide class.  *Id.* at 594, 596.

21      First, the Ninth Circuit found there were material differences between

22   California's consumer protection laws and the consumer protection laws of other

23   states, including whether proof of scienter or reliance are required and what

24   remedies the various state statutes afford.  *Id.* at 591.  Second, the court found that

25   each state "has a strong interest in applying its own consumer protection laws to

26   [automobile sales]" that take place within its boundaries.  *Id.* at 592.  Finally, the

27   court found that, while states have a strong interest in applying their own laws to

28

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

1   transactions in their own state, "California's interest in applying its law to residents

2   of foreign states is attenuated." *Id.* at 593–94.

3       Here, Plaintiffs seek to represent a nationwide class, not just California

4   residents and putative class members who purchased the Product in California, and

5   expressly seeks to apply California's laws to the claims of out-of-state consumers.

6   FAC ¶ 65.  Plaintiffs allege claims under the same California consumer protection

7   statutes at issue in *Mazza*—the CLRA, UCL, and FAL.  Thus, just as in *Mazza*,

8   Plaintiffs' nationwide class cannot be maintained because (1) there are material

9   differences between the consumer protection laws of the various states; (2) states

10  have a strong interest in applying their own laws to transactions within their own

11  states; and (3) California's interest in applying the CLRA, UCL, and FAL to

12  foreign residents is attenuated.  666 F.3d at 591–94.  Accordingly, this Court should

13  strike Plaintiff's nationwide class allegations.  *See Route*, 2013 WL 658251, at *8

14  (striking nationwide class allegations under *Mazza*).

15      While *Mazza* was decided at the class certification stage, "the principle

16  articulated in *Mazza* applies generally and is instructive even when addressing a

17  motion to dismiss." *Frezza v. Google, Inc*., No. 5:12–cv–00237–RMW, 2013 WL

18  1736788, at *6 (N.D. Cal. Apr. 22, 2013).  Indeed, numerous district courts have

19  followed *Mazza* in dismissing or striking nationwide class actions at the pleading

20  stage where plaintiffs have improperly sought to apply California laws to injuries

21  occurring in other states.  *See, e.g., Davison v. Kia Motors Am., Inc*., No. SACV

22  15–00239–CJC(RNBx), 2015 WL 3970502, at *2–4 (C.D. Cal. June 29, 2015)

23  (dismissing nationwide class claims under the UCL and CLRA pursuant to *Mazza*);

24  *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1010 (N.D. Cal. 2014) (dismissing

25  CLRA, UCL, and FAL class allegations as to purported nationwide class); *Route*,

26  2013 WL 658251, at *9 (striking nationwide class allegations under *Mazza* at the

27  dismissal stage).  This Court, too, should strike the unsustainable nationwide class

28

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

allegations from the Complaint.

### 2. Plaintiffs cannot bring a nationwide class based on the laws of other states without a named plaintiff from each of those states.

In addition to the California, North Carolina, and New York law-based claims, Plaintiffs impermissibly attempt to bring class claims under the consumer protection laws of forty-seven other states and the District of Columbia, without naming any plaintiffs from those jurisdictions. FAC ¶ 14. Courts have repeatedly dismissed state-law claims for lack of standing if they are brought on behalf of a putative class by named plaintiffs from states other than those of the putative class. *See Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *16 (N.D. Cal. June 1, 2018) (dismissing claims on behalf of non-California consumers where there was "no named plaintiff from *any* of the other 49 states whose laws are at issue") (emphasis in original); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) (plaintiffs did not have standing to bring claims in states where the plaintiff did not reside or where a named plaintiff did not purchase the product); *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175–76 (N.D. Cal. Aug. 29, 2017) (plaintiffs lacked standing to bring claims on behalf of a nationwide class without naming class representatives for the other states whose separate laws were invoked by the complaint).

Plaintiffs attempt to assert the laws of a multitude of states in which they do not reside and have suffered no injury. Absent named plaintiffs from the forty-seven other states and the District of Columbia, those claims on behalf of consumers outside of California, North Carolina, and New York must be dismissed

## IV.   CONCLUSION

Trader Joe's respectfully seeks an order dismissing Plaintiffs' First Amended Complaint.

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  January 18, 2019

DAWN SESTITO
R. COLLINS KILGORE
O'MELVENY & MYERS LLP


By:      /s/ Dawn Sestito
              Dawn Sestito
Attorneys for Defendant

MEM. ISO MOT. TO DISMISS OR
STRIKE FIRST AMEND. COMPL.
4:18-CV-04418-KAW