UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN MOORE, et al.,<br>Plaintiffs,<br>v.<br>TRADER JOE'S COMPANY,<br>Defendant. | Case No. 4:18-cv-04418-KAW<br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br>Re: Dkt. No. 33 |

On January 18, 2019, Defendant Trader Joe's Company filed a motion to dismiss Plaintiffs' first amended complaint.

On May 16, 2019, the Court held a hearing, and, after careful consideration of the parties' arguments and the applicable legal authority, for the reasons set forth below, the Court GRANTS Defendant's motion to dismiss without leave to amend, because any amendment would be futile.

## I. BACKGROUND

On December 21, 2018, Plaintiffs Lynn Moore, Shanque King, and Jeffrey Akwei filed their First Amended Complaint in a putative class action. (First Am. Compl., "FAC," Dkt. No. 32.) Therein, Plaintiffs allege that Defendant Trader Joe's Company ("Trader Joe's") engaged in "false, misleading, and deceptive marketing and sale" of Trader Joe's Manuka Honey (the "Product") by representing that the Product is composed "entirely" of "pure manuka honey" when the Product's manuka honey content has allegedly "been adulterated by the inclusion of cheaper honey." (*See* FAC ¶¶ 9, 11, 37.)

Plaintiffs claim that two of the Product's representations contributed to their alleged injuries: (1) the statement "100% New Zealand Manuka Honey" or "New Zealand Manuka Honey" on the Product's front label; and (2) the "ingredient statement," which lists "manuka

honey" as the only ingredient. (FAC ¶¶ 5-6, 26-31, 35-36.) Plaintiffs allege that tests of Product samples purportedly purchased by Plaintiffs Moore and Akwei showed between 57.3% and 62.6% of the pollen in the tested honey was from the manuka flower, with the remainder from other floral sources. (FAC ¶¶ 39-41.) Plaintiffs allege that Trader Joe's sales and marketing practices for the Product violate consumer protection and similar laws of all fifty states and the District of Columbia. (FAC ¶ 14.) Plaintiffs contend that the state laws mirror federal law regulating food labeling deception and food adulteration. (FAC ¶ 15 (citing 21 U.S.C. §§ 342-343).) As a result, Plaintiffs allege that Defendant's honey is mislabeled and falsely advertised as pure Manuka honey when it should be labeled as a "Manuka-based honey blend." (FAC ¶ 16.)

On January 18, 2019, Defendant filed a motion to dismiss. (Def.'s Mot., Dkt. No. 33.) On February 14, 2019, Plaintiffs filed an opposition. (Pls.' Opp'n, Dkt. No. 36.) On March 1, 2019, Defendant filed a reply. (Def.'s Reply, Dkt. No. 39.)

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### B. Request for Judicial Notice

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir. 1993). "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388

(9th Cir. 1987).

## III. DISCUSSION

### A. Request for Judicial Notice

As a preliminary matter, Defendant asks that the Court take judicial notice of three documents in support of their motion to dismiss. (Def.'s Req. for Judicial Not., "RJN," Dkt. No. 34.) The documents are purportedly true and correct copies of: 1) Webpage entitled "Grading System Explained" of the Unique Manuka Factor Honey Association ("UMF Grading System); 2) Webpage of Bees and Trees, available at https://www.beesandtrees.com/ (last accessed on January 18, 2019); and 3) webpage of the True Honey Company, dated March 30, 2017, and entitled "Why is manuka honey so expensive?" available at https://www.truehoney.co.nz/en/2017/03/30/why-is-manuka-honey-so-expensive/ (last accessed on January 18, 2019). (RJN at 2-3; Decl. of Collins Kilgore, "Kilgore Decl.," Dkt. No. 33-1 ¶¶ 2-4, Ex. 1-3.)

Plaintiffs do not oppose the request for judicial notice.

The UMF Grading System is the proper subject of judicial notice because the UMF Grading System represents one of the Unique Manuka Factor ("UMF") Honey Association's standards. *See Cover v. Windsor Surry Co.*, 2016 WL 520991, at *1 n. 1 (N.D. Cal. Feb. 2, 2016) (taking judicial notice of technical standards published by the American Society of the International Association for Testing and Materials). The existence of the standards can be accurately and readily determined by visiting the UMF Honey Association's website, and their accuracy cannot be reasonably questioned. *See id.*; *see also* Fed. R. Evid. 201(b).

The Court also takes judicial notice of parts of the Bee's and Tree's Webpage and the True Honey Webpage (collectively, "the webpages") because Plaintiffs incorporate portions of the webpages by reference in the first amended complaint. FAC ¶¶ 45, 52; *see Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 (N.D. Cal. 2013) (taking judicial notice of website screenshots plaintiff referenced in the complaint). The Court only takes judicial notice of a portion of the Bees and Trees website cited in the first amended complaint, and the March 30, 2017 blog entry titled "Why is manuka honey so expensive?" on the True Honey Company website.

Accordingly, the Court GRANTS Defendant's request for judicial notice.

4

**B. Motion to Dismiss**

Defendant moves to dismiss on a variety of grounds, which are discussed below.

### i. Whether the state law causes of action are preempted.

#### a. FDA Honey Guidelines are instructive

Both parties cite to the Food and Drug Administration's industry guidance regarding the labeling of honey. The guidance for proper labeling are designated as "nonbinding recommendations" and producers are permitted to "use an alternative approach if it satisfies the requirements of the applicable statutes and regulations." U.S. FOOD & DRUG ADMIN., PROPER LABELING OF HONEY AND HONEY PRODUCTS: GUIDANCE FOR INDUSTRY (2018) ("Honey Guidance"). Honey is a single ingredient food that may be labeled "with the name of the plant or blossom if you or the honey producer has information to support the conclusion that the plant or blossom designated on the label is the chief floral source of the honey." Honey Guidance at 5 (citing 21 U.S.C. § 343(i); 21 C.F.R. 101.3(b)). While non-binding and non-exhaustive, compliance with the Honey Guidance constitutes compliance with the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 342 (adulteration), 343 (misbranded food). Honey Guidelines at 3.

While the Honey Guidance discusses adulteration with non-honey sources, such as sugar or corn syrup, it does not address mixing high value honey with less expensive honey, and whether that constitutes adulteration in violation of 21 U.S.C. § 342(b).

#### b. Plaintiffs cannot allege adulteration as defined by § 342(b).

Under federal law, a food product will be deemed adulterated—

> (1) If any valuable constituent has been in whole or in part omitted or abstracted therefrom; or (2) if any substance has been substituted wholly or in part therefor; or (3) if damage or inferiority has been concealed in any manner; or (4) if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight, or reduce its quality or strength, or make it appear better or of greater value than it is.

21 U.S.C. § 342(b).

Defendant argues that Plaintiffs fail to plausibly allege that its manuka honey is adulterated with lower grade honey. (Def.'s Mot. at 6-7.) Defendant argues that simply asserting that the

honey is adulterated is a legal conclusion based on test results from two samples. *Id*. at 7.

In opposition, Plaintiffs argue that "Defendant mixes honey for which manuka is not the chief floral source with honey for which manuka is the chief floral source,… [] thereby creat[ing] large batches of honey that are slightly more than 50% from manuka." (Pls.' Opp'n at 3.) Plaintiffs cite to Paragraph 61 of the FAC to support this argument, but that paragraph does not clearly state this proposition. Instead, it states:

> Defendant's production process constitutes adulteration because it amalgamates honey from many different hives and only afterwards measures the manuka honey content of the mixture. Defendant thereby deliberately adulterates high-manuka honey by diluting it with less valuable low-manuka honey to enable it to market the admixture as "manuka honey."

(FAC ¶ 61.) As currently alleged, Plaintiffs do not clearly state that the honey mixed with the high value manuka honey cannot be independently labeled manuka honey prior to the amalgamation. Instead, as pled, it appears that both honeys can be legally identified as manuka honey, which means that the chief floral ingredient prior to mixing is manuka.

At the hearing, the Court asked Plaintiffs to specify which adulteration theory they were pursuing:

> MR. LEE: And so -- and in regards to the adulteration issue, it's really a red herring, Your Honor. The issue really is it a hundred percent manuka honey from manuka blossoms or not. If it's not a hundred percent, do they tell you that there is some other types of honey there. They don't. So all they tell you is that it's a hundred percent manuka honey and the ingredient list only says manuka honey. Now, the guidance --
>
> THE COURT: Let me just -- because this gets really weird. I want to make sure I'm following. It still is manuka honey, it sounds to me. It's still manuka honey from New Zealand. It's just that it has different pollen counts, depending on when you test it, where – you know, which hive it came from.
>
> MR. LEE: Absolutely not.
>
> THE COURT: You're going to have different levels of pollen but they're still coming from the source that would be called manuka honey. It's not like they went and took the manuka honey that they got from New Zealand and then adulterated it with some other honey from some other place that would definitely not be called manuka honey.
>
> MR. LEE: Absolutely not. The adulteration issue is really a red herring. What really could have happened was --

6

> THE COURT: I don't understand why the adulteration issue is a red herring when it seems to me that's the only basis for your claim.
>
> MR. LEE: For example, the -- there could be other flowers in the immediate area where the manuka flowers are. So the bees are not just going to the manuka flowers. They are going to the clover flowers. They are going to the … dandelions and they are all coming back to -- to store the nectar in the same hive and so it's already adulterated when it gets into the hive.
>
> THE COURT: No. I don't think that is what adulteration means from what I have read.

(5/16/19 Hearing Tr. At 17:4-18:13.) In sum, Plaintiffs clarified that their adulteration theory is premised on the bees visiting different floral sources and returning to the hive resulting in a lower manuka pollen count, rather than the manufacturer purposefully mixing manuka honey with non-manuka honey. To constitute adulteration under 21 U.S.C. § 342(b), the manufacturer or bottler would have to purposefully mix manuka honey with non-manuka honey. As there is no dispute that all of the honey involved is technically manuka honey, albeit with varying pollen counts, there cannot be adulteration in violation of the FDCA.

Accordingly, the motion to dismiss is granted without leave to amend, because Plaintiffs confirmed that they cannot plead sufficient facts to support their adulteration theory.

### c. The label is not misleading.

Honey is a single ingredient food that must be labeled "honey," which is its common or usual name. Honey Guidance at 5; 21 U.S.C. § 343(i); 21 C.F.R. 101.3. While not required, if the chief floral source can be ascertained, the producer may label the product with the source, such as manuka. Honey Guidelines at 5.

Here, Defendant argues that the Product would not mislead a reasonable consumer, because no reasonable consumer would believe the honey would have a single floral source. (Def.'s Mot. at 11.) Regardless, Defendant claims that the product labeling is accurate, because Plaintiffs received only manuka honey, not a blend of honeys. (Def.'s Mot. at 12.) Specifically, Defendant relies on *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 926 (N.D. Ill. 2017), for the proposition that the "100%" in the phrase "100% New Zealand Manuka Honey" could refer to manuka honey or that it entirely comes from New Zealand. (Def.'s Mot. at 12 n. 10.) In *In re 100% Grated Parmesan*, the court found that "a

reasonable consumer would not understand '100% Grated Parmesan Cheese' to warrant that the product contains only cheese without first inspecting the ingredient list. . . ." 275 F. Supp. 3d at 926. While the cheese product's ingredients list included other preservatives in addition to parmesan cheese, here, the Product's ingredients list includes only "manuka honey." (FAC ¶ 5.) This is consistent with Plaintiffs' own testing of the two product samples, which showed that the manuka content was 62.6% and 57.3%, rendering the product entirely, or 100%, manuka honey. (*See* FAC ¶ 39-41.)

Since Plaintiffs cannot allege adulteration, honey is a single ingredient food, and the chief floral source is undisputedly manuka, the product labeling is accurate. Given the accuracy of the label, a reasonable consumer could not find it misleading, because it is not.

### d. State law causes of action are preempted.

Claims one through eight are for deceptive and unfair trade practices, unfair competition, and false advertising under various New York, California, and North Carolina state laws. Plaintiffs acknowledge that the state laws mirror and incorporate the FDCA, 21 U.S.C. §§ 342, 343. (FAC ¶ 15 n. 4-5.) Defendant contends that the state law causes of action must be dismissed on the grounds that they seek to impose food-labeling standards different from those set forth in the FDCA. (Def.'s Mot. at 17.)

The FDCA, as amended by the Nutritional Labeling and Education Act ("NLEA"), sets forth uniform standards for food labeling and expressly preempts any food labeling requirements that are not identical to federal law. 21 U.S.C. § 343-1(a); *Hawkins v. Kroger Co.*, 906 F.3d 763, 769 (9th Cir. 2018). Therefore, if FDA regulations permit the labeling and branding at issue, any state law claim to the contrary would be preempted. *See Hawkins*, 906 F.3d at 770.

As discussed above, Defendant's product is accurately labeled 100% manuka honey, which is consistent with Plaintiffs' own testing of the two product samples. *See* discussion, *supra,* Part III.B.i.c; *see also* FAC ¶ 39-41. Additionally, Plaintiffs are not alleging adulteration in violation of federal law. *See* discussion, *supra*, Part III.B.i.b. As a result, the state law causes of action are preempted by federal law and must be dismissed.

//

### ii. Plaintiffs cannot sufficiently plead fraud

Plaintiffs' ninth cause of action is for fraud. (FAC ¶¶ 157-160.) Fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (a plaintiff alleging fraud must state with particularity the circumstances constituting fraud). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Under California law, the elements of fraud are

> (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages.

*West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 792 (2013) (citing *Lazar v. Superior Court* 12 Cal.4th 631, 638 (1996)).

Defendant argues that Plaintiffs have not sufficiently pled that Trader Joe's engaged in fraud by way of adulteration. (Def.'s Mot. at 15.) The Court agrees. The fraud cause of action is predicated on a valid adulteration theory—one in which humans (not bees) purposefully mix non-manuka honey with manuka honey. Since Plaintiffs confirmed at the hearing that they do not allege that humans engaged in adulteration, the fraud claim is not actionable. *See* discussion, *supra,* Part III.B.i.b.

Accordingly, the ninth cause of action is dismissed without leave to amend, because any amendment would be futile.

### iii. Breach of Warranty claim is dismissed without leave to amend

Defendant moves to dismiss the breach of warranty claim on the grounds that Plaintiffs unreasonably interpret the term "manuka honey" as promising a higher amount of manuka pollen than the product contains. (Def.'s Mot. at 21.) This claim must be dismissed for the same reasons as the fraud and other consumer causes of action—for failure to properly plead adulteration. As provided above, Plaintiffs cannot properly plead an adulteration claim, so the breach of

warranty claim is dismissed without leave to amend. *See* discussion, *supra,* Part III.B.i.b.

### iv. No need to determine the propriety of nationwide class certification

Lastly, Defendant moves to dismiss the class claims by arguing that *Mazza v. American Honda Motor Company,* 666 F.3d 581, 594 (9th Cir. 2012), precludes Plaintiffs from proceeding as a nationwide class. (*See* Def.'s Mot. at 22.) While likely premature, the Court need not decide whether Plaintiffs are proper class representatives, because there are no remaining, actionable claims.

## IV. CONCLUSION

In light of the foregoing, Defendant's motion to dismiss is GRANTED without leave to amend, because any amendment would be futile.

IT IS SO ORDERED.

Dated: June 24, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge